2007 UT App 214

**Nathan H. MERRILL, Petitioner,**

v.

**LABOR COMMISSION; Vermax of Florida, Inc. dba Dakota Cabinets; and Wausau Business Insurance, Respondents.**

No. 20060693–CA.

Court of Appeals of Utah.

June 21, 2007.

---

Phillip B. Shell, Murray, for Petitioner.

Sharon J. Eblen, Salt Lake City, for Respondents.

Thomas R. Lee, Provo, James R. Black, Eugene C. Miller Jr., Workers Compensation Fund of Utah, Salt Lake City, for Amicus Curiae.

Before GREENWOOD, Associate Presiding Judge, and BILLINGS and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Nathan H. Merrill petitions for review of the Utah Labor Commission's Order denying Merrill's Motion to Review concerning the constitutionality of Utah Code section

34A–2–413(5), *see* Utah Code Ann. § 34A–2–413(5) (2005). On appeal, Merrill argues that section 34A–2–413(5) violates the equal protection guarantees of both the Utah and federal constitutions. We affirm.

## BACKGROUND

¶ 2 Merrill first sustained a lower back injury at work on May 14, 1998. He re-injured his back while working for the same employer on April 13, 2001, and was forced to stop working due to his injuries on August 28, 2001. The Utah Labor Commission (the Labor Commission) subsequently awarded Merrill permanent and total disability benefits due to the injuries, effective August 28, 2001. As a result, Merrill began receiving workers' compensation benefits in the amount of approximately $1700 per month.

¶ 3 Merrill was not yet sixty-five when he became permanently disabled and, therefore, was not receiving social security retirement benefits at that time. Merrill did, however, begin receiving compensation for his injury under the Social Security Act in the form of social security disability benefits. Accordingly, from the time the Labor Commission awarded Merrill permanent and total disability until he turned sixty-five in December 2002, Merrill received approximately $1700 per month in workers' compensation benefits and $1100 per month in social security disability benefits. When Merrill turned sixty-five, his social security disability benefits automatically converted to social security retirement benefits, with the amount he received remaining unchanged. Overall, since the date of his initial award, Merrill has continued to receive unreduced awards of both workers' compensation benefits and social security benefits.

¶ 4 Both the Social Security Act and the Workers' Compensation Act contain "coordination of benefit" provisions designed to protect employer-funded compensation systems from paying overlapping benefits. The provisions reduce the benefits awarded to an individual under one compensation program based on benefits an individual is eligible to receive from another compensation program.

For example, under the Social Security Act, the sum of workers' compensation benefits and social security benefits may not exceed eighty percent of a worker's average earnings. *See* 42 U.S.C. § 424a(2)(5) (2000). Similarly, under section 34A–2–413(5) of the Workers' Compensation Act—the provision at issue here—a permanently disabled worker will receive disability compensation unaffected by the simultaneous award of any other benefit for six years. *See* Utah Code Ann. § 34A–2–413(5). After six years, however, section 413(5) requires that workers' compensation disability payments be reduced by half of the dollar amount of social security retirement benefits received by an individual during the same period. *See id.*

¶ 5 In August 2007, Merrill will have received six years of workers' compensation benefits, unreduced by any benefits he has received from social security. At that time, the offset provision under section 413(5) will take effect and Merrill's workers' compensation benefits will be reduced by approximately $550 per month—half of his $1100 monthly social security retirement award—resulting in workers' compensation payments of about $1150 each month. Accordingly, Merrill will receive roughly $2250 per month in combined workers' compensation and social security benefits, compared to the $2800 per month he currently receives.

¶ 6 Merrill filed a Motion for Review with the Labor Commission on June 7, 2006, contesting the constitutionality of section 413(5). The Labor Commission denied his motion to review on June 29, 2006, and Merrill now seeks review in this court.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Merrill argues that the coordination of benefits provision in the Workers' Compensation Act, *see* Utah Code Ann. § 34A–2–413(5), violates Section One of the Fourteenth Amendment of the United States Constitution and Article I, Section 24 of the Utah Constitution in that it fails to provide equal protection of the laws because it discriminates on the basis of age.[1] "[W]e re-

---

1. Merrill also notes in passing that "it could be

said that the statute discriminates against the

view the constitutionality of the statute upon which the Commission's action is based without deference, as a conclusion of law." *Velarde v. Board of Review of Indus. Comm'n,* 831 P.2d 123, 125 (Utah Ct.App.1992). However, "when reviewing statutes for constitutionality, a statute is presumed constitutional, and 'we resolve any reasonable doubts in favor of constitutionality.'" *Ryan v. Gold Cross Servs. Inc.,* 903 P.2d 423, 424 (Utah 1995) (quoting *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993)).

## ANALYSIS

■ ¶ 8 Merrill asserts that section 413(5) of the Workers' Compensation Act violates the Equal Protection Clause of the United States Constitution and its corresponding clause in the Utah Constitution because it reduces an individual's workers' compensation award based solely on the individual's age. Merrill argues that because section 413(5) is only triggered by a disabled individual's receipt of social security retirement benefits at age sixty-five, other younger workers who are similarly disabled are able to receive social security disability benefits in conjunction with workers' compensation benefits for longer periods of time before the offset provision takes effect. Merrill further argues that section 413(5) is not rationally related to a legitimate governmental interest. We disagree and uphold the statute as constitutional.

¶ 9 Article I, Section 24 of the Utah Constitution provides that "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24.

This provision of the Utah Constitution and the equal protection clause of the Fourteenth Amendment "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." However, ... "[t]he different language of Article I, [Section] 24,

the different constitutional contexts of the two provisions, and different jurisprudential considerations may lead to a different result in applying equal protection principles under Article I, [Section] 24 than might be reached under federal law."

*Greenwood v. City of N. Salt Lake,* 817 P.2d 816, 820 (Utah 1991) (citations omitted) (quoting *Malan v. Lewis,* 693 P.2d 661, 669–70 (Utah 1984)). Here, although Merrill asserts violations under both the Utah and federal constitutions, his argument does not distinguish between the two, and therefore we address both arguments under one analysis because Utah's "Uniform Operation of Laws provision is, in fact, the Utah equal protection guarantee." *Wood v. University of Utah Med. Ctr.,* 2002 UT 134, ¶ 32, 67 P.3d 436 (plurality).

■ ¶ 10 Under Article I, Section 24 of the Utah Constitution and the Fourteenth Amendment of the federal constitution we utilize a deferential standard of review unless the statute infringes a fundamental right or creates suspect classifications. *See Peterson v. Coca–Cola USA,* 2002 UT 42, ¶ 23, 48 P.3d 941 (reviewing an Article I, Section 24 challenge); *see also Massachusetts Bd. of Ret. v. Murgia,* 427 U.S. 307, 312–15, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam) (reviewing federal equal protection standard of review). The circumstances here do not implicate a suspect class or a fundamental right. *See Murgia,* 427 U.S. at 313, 96 S.Ct. 2562 (holding that a classification based on age does not constitute a suspect class for purposes of an equal protection analysis); *see also In re Tobin,* 424 Mass. 250, 675 N.E.2d 781, 784 (1997) (noting that an individual's interest in receiving workers' compensation benefits "obviously does not involve a fundamental right"). Accordingly, where no fundamental right or suspect class is involved, the deferential standard requires only that (1) the classification at issue be reasonable, (2) the legislative objectives be legitimate, and (3) there be a reasonable relationship between the two. *See Peterson,* 2002 UT 42

disabled in favor of the able bodied." Merrill does not, however, provide any statutory or precedential support for this position, and we therefore do not address it here. *See Coleman v. Stevens,* 2000 UT 98, ¶ 7, 17 P.3d 1122 (noting

that "[i]t is well established that a reviewing court will not address arguments that are not adequately briefed" and that "[f]ailure to provide any analysis or legal authority constitutes inadequate briefing" (quotations omitted)).

at ¶ 23, 48 P.3d 941 (outlining the test used under the Utah Constitution); *Murgia*, 427 U.S. at 314, 96 S.Ct. 2562 (requiring only that classification rationally further state's purpose to satisfy Fourteenth Amendment).

¶ 11 Merrill first argues that there are two basic classifications under the statute: (1) injured workers who are eligible to receive social security retirement benefits and (2) injured workers who are not eligible for social security retirement benefits. Merrill contends that reaching the age of sixty-five is the only distinguishing factor between the two classes, and therefore the statute discriminates based on age.

■ ¶ 12 We begin by recognizing that there is nothing inherently unreasonable in distinguishing between individuals based on age and that age distinctions have often been upheld as constitutional in other contexts. *See Gregory v. Ashcroft*, 501 U.S. 452, 473, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (upholding mandatory judicial retirement at age seventy as constitutional); *Vance v. Bradley*, 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (finding mandatory foreign service officer retirement at age sixty constitutional); *Murgia*, 427 U.S. at 313–14, 96 S.Ct. 2562 (finding Massachusetts ban on employment of police officer over age fifty constitutional based in part on ground that "old age does not define a 'discrete and insular group'. . . . [I]nstead, it marks a stage that each of us will reach if we live out our normal span." (citation omitted)). Because a statute does not violate the equal protection merely because the classifications made by it are imperfect, *see Murgia*, 427 U.S. at 316, 96 S.Ct. 2562 and because Merrill has not established that the classification under section 413(5) is inherently unreasonable, we turn to the legitimacy of the legislation's objectives.

■ ¶ 13 In reviewing the legitimacy of a legislative purpose,

> the court will sustain legislative action if it can reasonably conceive of facts which would justify the classifications made by the legislation. . . . [W]e do not require exact proof of the legislative purposes; it is enough if a legitimate purpose can be reasonably imputed to the legislative body.

*Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 427 (Utah 1995) (citation omitted).

¶ 14 The United States Supreme Court and other jurisdictions have found that governmental efforts to avoid duplication of disability benefits constitute a legitimate legislative purpose. In *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231, (1971), the Supreme Court rejected a due process challenge to a federal social security coordination of benefits provision, similar to the provision at issue here, that reduces an individual's federal social security benefits if, together with state or local workers' compensation, an individual's wage-replacement benefits exceed eighty percent of the individual's former salary. *See id.* at 83, 92 S.Ct. 254. In determining that the federal social security provision was supported by a legitimate legislative objective, the Court noted that "[i]t is self-evident that the offset reflected a judgment by Congress that the work[ers]' compensation and [social security] disability insurance programs in certain instances served a common purpose," *id.* at 82, 92 S.Ct. 254 and "that a duplication in benefits might lead to the erosion of the work[ers]' compensation programs," *id.* at 83, 92 S.Ct. 254.

¶ 15 States that have rejected equal protection challenges to state workers' compensation coordination of benefits provisions like section 413(5) have articulated a similar rationale. The Supreme Judicial Court of Massachusetts upheld a provision that eliminates an individual's workers' compensation benefits if the worker is sixty-five years old, has been out of the labor market for at least two years, and is eligible for social security benefits or a private pension paid for in part or whole by an employer. *See In re Tobin*, 424 Mass. 250, 675 N.E.2d 781, 783 (1997). In that case, the court found two legitimate legislative objectives for enacting the statute: first, "the [l]egislature could rationally have enacted [the provision] to . . . prevent the stacking of benefits" and therefore halt any " 'double-dipping' through the receipt of both workers' compensation benefits and social security [payments]"; and second, the legislature could have enacted the statute "to reduce the cost of workers' compensation premiums for employers" who pay into "mul-

tiple benefit systems such as workers' compensation" and social security. *Id.* at 784, 675 N.E.2d 781.

¶ 16 Other jurisdictions agree. In *Vogel v. Wells Fargo Guard Services,* 937 S.W.2d 856 (Tenn.1996), the Tennessee Supreme Court held that "the [Tennessee L]egislature was attempting to serve a legitimate state interest in awarding compensation benefits for the permanently, totally disabled employee *until* old-age Social Security benefits commenced." *Id.* at 861 (emphasis added). And, in *Harris v. Department of Labor & Industries,* 120 Wash.2d 461, 843 P.2d 1056 (1993) (en banc), the Washington Supreme Court concluded that "[s]tate disability benefits and federal old age social security benefits serve the same purpose" and that the coordination of benefit provision therefore served a legitimate purpose in avoiding duplication of benefits, saving money for the state, and reducing industrial insurance premiums. *Id.* at 1066; *see also Brown v. Goodyear Tire & Rubber Co.,* 3 Kan.App.2d 648, 599 P.2d 1031, 1036 (1979) (upholding a Kansas statute that allows for termination of workers' compensation benefits once an employee begins receiving social security retirement benefits because "[a]fter retirement the wage loss experienced by a worker is not caused by injury, but by retirement").

¶ 17 This same rational is further reflected in the leading treatise on Workers' Compensation:

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. *Now if a work[er] undergoes a period of wage loss due to all three conditions, it does not follow that he or she*

*should receive three sets of benefits simultaneously and thereby recover more than his or her actual wage. The worker is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit.*

17 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 157.01 (2007) (emphasis added).

¶ 18 We find the reasoning from the United States Supreme Court and other jurisdictions helpful, and the analysis in treatises persuasive. In enacting section 413(5), the Utah Legislature may have legitimately concluded that the statute would assure employees adequate recovery for wages lost due to disability but also avoid duplication in benefits by reducing workers' compensation awards once workers also begin receiving social security retirement payments. Additionally, the legislature may have intended to reduce the cost of workers' compensation insurance premiums for employers. Thus, we can conceive of at least two legitimate legislative purposes behind the challenged legislation.

¶ 19 Our final inquiry, then, concerns whether the legislature chose a reasonable means to achieve its objective. *See Peterson v. Coca–Cola USA,* 2002 UT 42, ¶ 27, 48 P.3d 941. We hold that the classification resulting from section 413(5) is not an unreasonable means for achieving the legitimate objectives discussed above. It is reasonable for the legislature to target sixty-five-year-old recipients of workers' compensation disability benefits who also receive social security retirement benefits because those individuals receive overlapping wage replacement awards for one lost wage.[2] Further, workers' compensation is funded entirely by the employer, and social security is funded by equal contributions from the employee and the employer. Accordingly, the classification under section 413(5) reduces the employer's

---

**2.** Merrill argues, but does not cite any authority in support of his argument, that social security retirement benefits are not wage replacement benefits because an individual who receives social security retirement benefits can still choose to work. We disagree. *See Social Sec. Bd. v. Nierotko,* 327 U.S. 358, 364, 66 S.Ct. 637, 90 L.Ed. 718 (1946) (noting that "the purpose of the

federal old age benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor"). Whether a retired individual chooses to continue working has no bearing on the *purpose* of the benefits provided under the Social Security Act.

obligation to pay both one-hundred percent of an employee's disability benefits and half of an employee's retirement benefits at the same time, thus saving money for the employer and maintaining the integrity of Utah's workers' compensation system.

## CONCLUSION

¶ 20 The age classification under section 413(5) of the Workers' Compensation Act violates neither Article I, Section 24 of the Utah Constitution nor the Equal Protection Clause of the federal constitution because it is rationally related to legitimate legislative objectives.

¶ 21 Affirmed.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and JUDITH M. BILLINGS, Judge.