2009 UT 26

Nathan H. MERRILL, Petitioner,

v.

UTAH LABOR COMMISSION; Vermax of Florida, Inc., dba Dakota Cabinets; Workers Compensation Fund; and Wausau Business Insurance, Respondents.

No. 20070584.

Supreme Court of Utah.

April 24, 2009.

Phillip B. Shell, Salt Lake City, for petitioner.

Sharon J. Eblen, Salt Lake City, for respondents.

Alan Hennebold, Salt Lake City, for Labor Commission.

James R. Black, Thomas R. Lee, Eugene C. Miller, Salt Lake City, amicus Workers Compensation Fund.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 We granted certiorari to consider whether Utah Code section 34A–2–413(5) violates the Equal Protection Clauses of the Utah and United States Constitutions by discriminating on the basis of age. Section 34A–2–413(5) provides an offset reducing the amount of benefits for individuals receiving both workers' compensation benefits and social security retirement benefits. Specifically, when an individual qualifies for both social security retirement benefits and workers' compensation benefits, and when the individual has received 312 weeks of workers' compensation, workers' compensation benefits are reduced by fifty percent of the amount the individual is receiving in social security retirement benefits. We hold that this offset violates Utah's uniform operation of the law guarantee and reverse and remand.

## BACKGROUND

¶ 2 The opinion of the court of appeals contains a thorough factual history, which we will not repeat here. *See Merrill v. Labor Comm'n*, 2007 UT App 214, ¶¶ 2–6, 163 P.3d

741. Instead, we recount only those facts relevant to the appeal. Nathan Merrill was injured while working for Vermax of Florida, Inc., dba Dakota Cabinets (Dakota). The Utah Labor Commission (the Commission) determined that Merrill had become permanently and totally disabled and was unable to find other employment. The Commission originally ordered that Merrill receive workers' compensation payments of $395 per week, plus other statutorily prescribed payments to be determined. Dakota subsequently challenged the $395 award, arguing that it needed to be offset pursuant to subsection (5) of Utah Code section 34A–2–413, which provides:

> Notwithstanding the minimum rate established in Subsection (2), the compensation payable by the employer, its insurance carrier, or the Employers' Reinsurance Fund, after an employee has received compensation from the employer or the employer's insurance carrier for any combination of disabilities amounting to 312 weeks of compensation at the applicable total disability compensation rate, shall be reduced, to the extent allowable by law, by the dollar amount of 50% of the Social Security retirement benefits received by the employee during the same period.

Utah Code Ann. § 34A–2–413(5) (2005).[1]

¶ 3 The appellant argues that this subsection violates both the uniform operation of laws provision of article I, section 24 of the Utah Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. He asserts that the offset treats him differently than others similarly situated without a rational basis. The Commission determined that it did not have authority to consider the constitutionality of the statute and ordered an offset in the payments. Mr. Merrill appealed to the Utah Court of Appeals. The court of appeals held:

> In enacting section 413(5), the Utah Legislature may have legitimately concluded

---

1. This section was enacted in 1988 and not amended until 2005. The 2005 amendments made stylistic changes that do not affect our analysis; so, we cite to the 2005 version. The statute was subsequently amended in 2008. Utah Code Ann. § 34A–2–413(5) (Supp.2008). This amended version of the statute is substan-

tially the same as the version at issue in this case, with the exception of a cost-of-living increase which has no impact on our analysis. *See id.* § 34A–2–413(5)(b)(i). Thus the analysis we apply to the 2005 version is also applicable to the 2008 version.

that the statute would assure employees adequate recovery for wages lost due to disability but also avoid duplication in benefits by reducing workers' compensation awards once workers also begin receiving social security retirement payments. Additionally, the legislature may have intended to reduce the cost of workers' compensation insurance premiums for employers. Thus, we can conceive of at least two legitimate legislative purposes behind the challenged legislation.

*Merrill*, 2007 UT App 214, ¶ 18, 163 P.3d 741.

¶ 4 The court of appeals further held that "the legislature chose a reasonable means to achieve its objective" and that the statute survived rational basis review under the Utah Constitution. *Id.* ¶¶ 19–20.

## STANDARD OF REVIEW

■ ¶ 5 On certiorari, we review the decision of the Utah Court of Appeals for correctness. *Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 9, 84 P.3d 1201. The constitutionality of a statute is a question of law that we also review for correctness. *Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 424 (Utah 1995); *see also Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990) ("[T]his court shows no deference to the Tax Commission's conclusion as to the legality or constitutionality of tax statutes because they are conclusions of law."). "It is important to note at the outset that our uniform operation of the laws analysis is guided by the well-settled proposition that all statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989); *see also Ryan*, 903 P.2d at 424.

## ANALYSIS

## I. WE CONSIDER THIS EQUAL PROTECTION CHALLENGE UNDER THE FRAMEWORK OF UTAH LAW

■ ¶ 6 Mr. Merrill has challenged the constitutionality of the statute under both the Utah Constitution and the United States Constitution. The uniform operation of laws provision of the Utah Constitution provides, "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. Similarly, the Fourteenth Amendment of the United States Constitution provides for equal protection of the laws. U.S. Const. amend. XIV, § 1. The purpose of the uniform operation of laws provision is to prevent "classifying persons in such a manner that those who are similarly situated with respect to the purpose of a law are treated differently by that law, to the detriment of some of those so classified." *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989). "The essence of the uniform operation of laws principle is that 'legislative classifications resulting in differing treatment for different persons must be based on actual differences that are reasonably related to the legitimate purposes of the legislation.'" *Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 426 (Utah 1995) (quoting *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 887 (Utah 1988)). "[P]ersons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan v. Lewis*, 693 P.2d 661, 669 (Utah 1984).

■ ¶ 7 The uniform operation of laws provision and the Equal Protection clause address similar concerns in determining the constitutionality of a statute. Both have as their basic concept "the settled concern of the law that the legislature be restrained from the fundamentally unfair practice of creating classifications that result in different treatment being given [to] persons who are, in fact, similarly situated." *Mountain Fuel Supply Co.*, 752 P.2d at 888. "The two provisions are substantially parallel." *State v. Merrill*, 2005 UT 34, ¶ 31, 114 P.3d 585. Accordingly, because our "review [of] legislative classifications under article I, section 24 [of the Utah Constitution] . . . is at least as exacting and, in some circumstances, more rigorous than the standard applied under the [Fourteenth Amendment of the] federal constitution," *Mountain Fuel Supply Co.*, 752 P.2d at 889, we evaluate the constitutionality of the statute under Utah law.

## II. THE STATUTE IS UNCONSTITUTIONAL

■ ¶ 8 The United States Supreme Court has held that age is not a suspect classification, and statutes that create classifications based on age are analyzed under a rational basis review. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). We likewise subject classifications based on age to rational basis review. *Purdie v. Univ. of Utah*, 584 P.2d 831, 832 (Utah 1978).

■ ¶ 9 We undertake a three-part inquiry to determine if a statute violates the uniform operation of laws. "In scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes." *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989).

*A. It Is Reasonable to Classify Based on Age but It Is Not Reasonable to Classify Injured Workers Based on Receipt of Social Security Retirement Benefits*

¶ 10 The first step in the test is to determine if the classification made in the statute is reasonable. In deciding if a classification is reasonable, we have considered: (1) if there is a greater burden on one class as opposed to another without a reason; (2) if the statute results in unfair discrimination; (3) if the statute creates a classification that is arbitrary or unreasonable; or (4) if the statute singles out similarly situated people or groups without justification. *See Weber Basin Home Builders Ass'n v. Roy City*, 26 Utah 2d 215, 487 P.2d 866, 868 (1971) (questioning whether an ordinance "results in an unjust discrimination by imposing a greater burden of the cost of city government on one class of persons ... without any proper basis"); *Blue Cross & Blue Shield*, 779 P.2d at 640 (asking whether "the classifications drawn by the statutes create a discrimination 'with no rational basis'") (quoting *Mountain Fuel Supply Co.*, 752 P.2d at 890); *State v. Merrill*, 2005 UT 34, ¶ 41, 114 P.3d 585 (explaining the standard for determining the constitutionality of a classification is whether it is "arbitrary or unreasonable"); *Anderson v. Provo City Corp.*, 2005 UT 5, ¶ 18, 108 P.3d 701 ("The provision forbids singling out one person or group of persons from among the larger class [of those similarly situated] on the basis of a tenuous justification that has little or no merit.") (internal quotation marks omitted) (alteration in original). The most important consideration in this case is whether the statute singles out similarly situated people or groups without justification.

■ ¶ 11 In differentiating between injured workers who qualify for social security retirement benefits and those who do not, Utah Code section 34A–2–413(5) creates two classifications, one implicitly based on age and the other based on the receipt of benefits. The statute implicitly relies on age by using the benchmark of social security retirement benefits. Individuals under the age of sixty-five are not eligible for social security retirement benefits. The statute also classifies based on eligibility for benefits by reducing workers' compensation benefits if workers are receiving social security retirement benefits.

¶ 12 As the court of appeals pointed out, the United States Supreme Court has held that age is a permissible method of classifying individuals where a rational basis exists. *See Merrill v. Labor Comm'n*, 2007 UT App 214, ¶ 12, 163 P.3d 741 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 473, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (requiring judicial officers to retire at age seventy is not unconstitutional); *Vance v. Bradley*, 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (requiring foreign service officers to retire at age sixty is not unconstitutional); *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (requiring police officers to retire at age fifty is not unconstitutional)).

¶ 13 The classification at issue in this case, however, is more complicated than simply whether an individual is over the age of sixty-five. The classification also depends on whether an individual is eligible for social security retirement. Eligibility for social security retirement is based on several factors,

including the number of years an individual has worked and contributed to the social security fund. Individuals who are over the age of sixty-five and not receiving social security retirement benefits are treated differently than individuals over the age of sixty-five and receiving social security benefits.

¶ 14 In *State Tax Commission v. Department of Finance,* this court evaluated the constitutionality of a provision of the Utah Workers' Compensation Act that taxed the State Insurance Fund more than private insurance carriers or self-insurance. 576 P.2d 1297, 1298 (Utah 1978). We held that this tax created an impermissible classification by singling out one member of the class without justification: "The State Insurance Fund has been singled out from among a larger class of insurers to pay a tax imposed upon no one else which must be considered to be arbitrarily and constitutionally prohibited." *Id.* Also, in *Malan v. Lewis,* we held the Automobile Guest Statute unconstitutional because it singled out a class of individuals without a rational basis. 693 P.2d 661, 674–75 (Utah 1984). We stated,

> Nor can justification be found for the statute on the theory that it reduces insurance rates. That may be true, but there is no valid justification for achieving that objective by singling out nonpaying automobile guests. It would be just as logical to select out all victims of automobile accidents caused by Ford automobiles. That also would reduce insurance premiums, but there is no rational basis for discriminating against the disadvantaged class in either case.

*Id.*

¶ 15 It is not reasonable for a state legislature to classify individuals based on the receipt of federal social security retirement benefits because this classification singles out certain people without a rational basis. In *Reesor v. Mont. State Fund,* 325 Mont. 1, 103 P.3d 1019, 1022 (2004), the Montana Supreme Court declared, in evaluating a statute similar to the one at issue in this case,

> [B]oth classes have suffered work-related injuries, are unable to return to their time of injury jobs, have permanent physical impairment ratings and must rely on [the workers' compensation act] as their exclusive remedy under [the] law.... Furthermore, chronological age and the corresponding eligibility for social security retirement benefits is unrelated to a person's ability to engage in meaningful employment.

*Id.*

¶ 16 Presumably, the legislature was attempting to account for the additional income available to social security retirement recipients. But if income is the criterion, there is no rational basis to rely only on income from a single source.

¶ 17 The statute fails based on its classification scheme alone. However, even assuming the classification was justified, we still find the classification unconstitutional because it is not reasonably related to a legitimate legislative objective.

### B. The Legislature Has Two Legitimate Objectives

¶ 18 The next step in the analysis is to determine if the legislature has a legitimate objective in creating the classification. *Gallivan v. Walker,* 2002 UT 89, ¶ 43, 54 P.3d 1069; *Blue Cross & Blue Shield,* 779 P.2d at 640. "We do not, however, 'accept any conceivable reason for the legislation.... Rather, we judge such enactments on the basis of reasonable or actual legislative purposes.'" *Blue Cross & Blue Shield,* 779 P.2d at 637 (quoting *Malan,* 693 P.2d at 671 n. 14).

¶ 19 The court of appeals identified two possible objectives the legislature could have had in creating the offset: to prevent the duplication of disability benefits and to reduce the cost of workers' compensation for employers. *Merrill,* 2007 UT App 214, ¶ 18, 163 P.3d 741. Our review of the legislative history indicates a third purpose, to restore the solvency of the workers' compensation fund. *See* House Debate on H.B. 218, 1988 Utah Leg., Gen. Sess. (Feb. 16, 1988)(statement of Rep. Sousen)(noting that the reason for the bill is that the Second Injury Fund is a trust fund very much needed and $70 million in deficit).

¶ 20 Preventing the duplication of benefits and restoring the solvency of the workers'

compensation fund are legitimate objectives. Reducing employers' liability for workers' compensation payments is not a legitimate objective because the Workers' Compensation Act has already limited the liability of employers for injuries employees receive while on the job to statutorily-defined recoveries. It is not a legitimate objective of the legislature to further reduce employer liability based on payment of funds an employee would be entitled to regardless of eligibility for workers' compensation; nor is it legitimate to take into account the money the employee has contributed to social security retirement.

¶ 21 Nonetheless, because the legislature had two legitimate objectives in creating the offset, we evaluate whether there is a reasonable relationship between the classifications and the objectives.

### C. There Is No Reasonable Relationship Between The Classifications and The Objectives

¶ 22 In the last step of the three-part inquiry, we determine whether the legislature's classification is reasonably related to its legitimate objectives. *Gallivan*, 2002 UT 89, ¶ 43, 54 P.3d 1069 (inquiring "whether the ... requirement is reasonably necessary to further the legislative purpose"); *Blue Cross & Blue Shield*, 779 P.2d at 641 ("The third and most critical question is whether the legislature chose a permissible means to achieve its legitimate ends.").

¶ 23 Although creating a solvent insurance fund and preventing the duplication of disability benefits are legitimate objectives, we do not believe that reducing the workers' compensation benefits of individuals age sixty-five and older who qualify for social security retirement benefits reasonably achieves those objectives. The purposes of workers' compensation and social security retirement benefits are not the same, and neither can legitimately serve as a substitute for the other. Because workers' compensation benefits and social security retirement benefits are not duplicative, offsetting workers' compensation benefits against social security retirement benefits is not a rational means to prevent the duplication of benefits or to achieve a solvent workers' compensation fund.

### 1. The Purpose of Workers' Compensation Is to Provide an Exclusive Remedy for Injuries

■ ¶ 24 The Workers' Compensation Act was enacted to assure the injured employee and his family "an income during the period of his total disability as well as compensation for any resulting permanent disability, to eliminate the expense, delay, and uncertainty of the employee having to prove the employer's negligence, and to place the burden of industrial injuries on industry." *State Tax Comm'n*, 576 P.2d at 1298. Utah adopted workers' compensation as a tort liability reform measure. Utah Code Ann. § 34A–2–105(1) (2005 & Supp.2008); *see also Golden v. Westark Cmty. Coll.*, 333 Ark. 41, 969 S.W.2d 154, 158 (1998) (explaining "workers' compensation benefits are a substitute for access to the courts for redress for torts and are not a welfare benefit for wage loss" and "[w]orkers' compensation benefits are paid from insurance provided by employers in exchange for the employee's forbearance from suing the employer in tort" (internal quotation marks and citations omitted)); *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162, 166 (1996) ("Permanent total disability awarded under workers' compensation is part of a comprehensive plan designed to rectify the results of an injury in the workplace. The payments to the claimants and other benefits are in lieu of such elements of damage in the common law tort system as lost wages, lost earning capacity, reimbursement of past and future medical expenses, past and present pain and suffering, emotional distress, and other factors.").

¶ 25 In exchange for their right to sue, injured workers receive compensation for damages incurred by an on-the-job injury including compensation for the injury itself; medical, nurse, and hospital services; and medicines. Utah Code Ann. § 34A–2–401 (2005). The workers' compensation system in Utah does not provide a measure to opt out, unless employers fail to pay to the workers' compensation fund, in which case the employee may bring a civil action. *Id.* § 34A–

2–105 (2005 & Supp.2008); *id.* 34A–2–207 (2005). The Workers' Compensation Act is the sole remedy for injured employees. *Id.* As such, it is much more than a wage-replacement system.

2. **The Purpose of Social Security Retirement Benefits Is to Serve as a Pension for Individuals Reaching the Age of Sixty–Five**

¶ 26 The purpose of social security retirement benefits is entirely different from the workers' compensation scheme. " 'Social security retirement benefits are provided to persons over age sixty-five regardless of injury.... These benefits are not disability benefits, but are old-age entitlements serving the same function as pension payments.' " *Golden,* 969 S.W.2d at 158 (quoting *Indus. Claim Appeals Office v. Romero,* 912 P.2d 62, 67–68 (Colo.1996)).

¶ 27 Social security retirement benefits allow participants to receive income after age sixty-five if they have contributed adequately to the fund. *See Reesor,* 103 P.3d at 1023 (explaining that social security benefits "provide the recipient with supplemental income after he contributes to the program throughout his working life" (emphasis omitted)); *State ex rel. Boan v. Richardson,* 482 S.E.2d at 166 ("[T]he benefits are ... additional compensation paid by insurance as a result of having worked some period of time at some average taxable salary, except as the payments reflect a return of the recipient's wage contributions to the system.").

3. **Social Security Retirement Benefits and Workers' Compensation Disability Payments Are Not Duplicative and Are Not Wage–Loss Replacements**

¶ 28 The court of appeals found that it was reasonable for the legislature to draft a provision offsetting workers' compensation by social security retirement because the two systems provided duplicate benefits and because both social security retirement and workers' compensation were income-loss substitutes. It relied on *Richardson v. Belcher,* 404 U.S. 78, 82–83, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), where the United States Supreme Court held it was constitutional to offset the receipt of social security disability benefits from workers' compensation benefits because both had the same purpose of compensating for disability. However, *Richardson* is inapposite because workers' compensation benefits and social security *retirement* benefits are not both disability benefits. The court of appeals also cited *Larson's Workers Compensation* for the proposition that workers' compensation and social security retirement are both wage loss replacement income and should be offset against each other. 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 157.04 (2008). We disagree.

¶ 29 We hold that social security retirement benefits and workers' compensation benefits are not duplicative. Neither social security retirement benefits nor workers' compensation are solely wage-replacement measures; each serve additional purposes. Furthermore, retirement benefits and disability benefits utilize entirely different means to accomplish those purposes.

¶ 30 First, "the two programs ... compute benefits on entirely different bases and compensate for entirely different eventualities...." *State ex rel. Boan v. Richardson,* 482 S.E.2d at 168.

> [S]ocial security retirement benefits and social security disability benefits are two distinct programs and *cannot offset one another due to the fact that both programs are based on completely different concepts.* We see no reason why a forty-year-old injured worker should receive full [permanent partial disability] benefits pursuant to [statute], and a sixty-five-year-old worker with an identical injury should receive only an impairment award due to the fact he has reached social security retirement age. There is no rational basis to deny a class of injured workers a category of benefits based upon their age.

*Reesor,* 103 P.3d at 1024 (emphasis added) (citation omitted).

¶ 31 Second, social security retirement benefits are not paid in connection with an injury or disability, but are paid after an individual has contributed to the fund. *See Reesor,* 103 P.3d at 1023 ("While workers'

compensation and social security retirement may be similar in that both are social programs, social security retirement benefits, unlike workers' compensation, provide the recipient with supplemental income *after* he contributes to the program throughout his working life."); *State ex rel. Boan v. Richardson,* 482 S.E.2d at 166 ("While old age social security may well provide some level of income while one who has been injured at work is not working, it is paid as a result of work history and the attainment of the age required age,[sic] not by reason of any injury.") Thus, as another court put it, the "triggering event" of "reaching the retirement age specified by the federal statute" after one has "work[ed] the requisite number of quarters" is "in direct contrast to workers compensation benefits which are available *only* if a worker is injured while in the course and scope of employment and experiences wage loss as a result of such injury." *Reesor,* 103 P.3d at 1023.

¶ 32 Third, the Senior Citizen's Freedom to Work Act, 42 U.S.C. § 402 (2000), has allowed individuals over the age of sixty-five to receive social security benefits and continue to work, thus invalidating the rationale that social security retirement benefits are a wage replacement. The effect of this Act in the context of reducing workers' compensation benefits has been noted as such:

> The dissent urges that there was a clear purpose to this legislation: to prevent double payment to an employee out of two different government programs which are designed to replace a loss of wages. The problem with this analysis is that social security retirement benefits are not wage loss benefits. There is no requirement that to be entitled to social security benefits a person must stop working. In 2000, the federal government enacted the Senior Citizen's Freedom to Work Act (42 U.S.C. 402) which eliminated the earnings limit for workers over the age of 65. Thus, there is no longer a reduction in social security retirement benefits due to wages regardless of the amount of wages earned by individuals age 65 and older.

*Reesor,* 103 P.3d at 1024; *see also Golden,* 969 S.W.2d at 158 ("[B]ecause a worker age 65 or older can supplement his or her social security retirement benefits by income from gainful employment, social security benefits have evolved into a benefit more associated with advanced years than a replacement for wage loss.").

¶ 33 Fourth, the public policy in the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) (2006), further supports the proposition that social security retirement benefits are not wage loss benefits and are not duplicative of workers' compensation benefits. *See Romero v. Industrial Claim Appeals Office,* 902 P.2d 896 (Colo.App.1995). "Among ADEA's substantive provisions is one that prohibits an employer from discriminating against any employee 'with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Id.* (quoting 29 U.S.C. § 623(a)(1) (1988)) (alteration in original). This provision makes it improper for "a private employer or the state itself (with respect to its employees) to compel its older employees to substitute retirement benefits for disability benefits." *Id.* Although "[w]e do not determine that the disability payments at issue are governed by the ADEA,.... We consider ... the important public policy [inherent therein] ... to assess[ ] the rationality or the arbitrariness of the classifications created .... [a]nd, that public policy supports our conclusion that [the statute] is constitutionally arbitrary." *Id.* (citation omitted).

¶ 34 Finally, we agree with the Supreme Court of Appeals of West Virginia that

> the total denial of benefits based on the assumption that one eligible to receive old age social security benefits is fully compensated for his injury by some level of workers' compensation benefits, reduced by a portion of social security benefits, raises a genuine issue as to whether the workers' compensation scheme is an adequate substitute remedy for that which might be available in the tort system for such an injury, thus implicating the validity of the system as a substitute for access to the courts.

*State ex rel. Boan v. Richardson,* 482 S.E.2d at 168.

¶ 35 We acknowledge that other jurisdictions have come to the opposite conclusion. *See Merrill*, 2007 UT App 214, ¶¶ 15–16, 163 P.3d 741, (citing *In re Tobin*, 424 Mass. 250, 675 N.E.2d 781, 783 (1997); *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856 (Tenn. 1996); *Harris v. Dept. of Labor & Indus.*, 120 Wash.2d 461, 843 P.2d 1056 (1993); *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan.App.2d 648, 599 P.2d 1031, 1036 (1979)). However, all of these jurisdictions considered workers' compensation and social security retirement benefits as wage-loss replacement income. We conclude that to the contrary, social security retirement benefits and workers' compensation are not simply wage-loss replacement benefits, but serve other, important purposes. Therefore, it is not rational to offset them against each other.

4. It Is Not Rational to Offset Workers' Compensation Disability Payments by Fifty–Percent of Social Security Retirement Benefits

¶ 36 In this case, the legislature has singled out injured individuals who have contributed to the economy by working the required number of years to qualify for social security retirement benefits, and punished them by reducing their workers' compensation benefits. This is not a rational response to the legislature's concerns about maintaining the solvency of the workers' compensation fund or preventing employees from receiving duplicate benefits. We agree that

> economic viability of the workers' compensation program and eradication of duplicate benefits are worthy and lofty goals, but we fail to see how workers' compensation benefits paid for loss of the ability to earn the same wages and a retirement benefit under social security are duplicative in any respect. The economic objective behind [the statute] to save money may be reasonable but the means for achieving that particular end are not, and, hence, the statute fails to withstand constitutional scrutiny.

*Golden*, 969 S.W.2d at 159 (citation omitted).

¶ 37 We agree with other jurisdictions that have held similar statutes unconstitutional. *See State ex rel. Boan v. Richardson*, 482 S.E.2d at 171 ("We conclude that the statute is defective in creating the classification of 'old age social security recipient' and reducing benefits for those persons, that such classification, as here applied, bears no reasonable relationship to a proper governmental purpose of avoiding duplication of benefits, and that it results in all persons within the class of 'old age social security recipients' not being treated equally."); *Golden*, 969 S.W.2d at 158 ("Thus, withholding workers' compensation benefits from persons age sixty-five and older because they presumably receive retirement benefits is not rationally related to the goal of preventing duplicate benefits because workers' compensation benefits do not serve the same purpose as retirement benefits." (quoting *Romero*, 912 P.2d at 67–68)).

## CONCLUSION

¶ 38 Utah Code section 34A–2–413(5) violates Utah's uniform operation of laws provision by unconstitutionally singling out and reducing workers' compensation benefits of injured individuals over the age of sixty-five who qualify for social security retirement benefits. We declare the offset provision in the statute unconstitutional and reverse and remand for the court of appeals to enter an order in accordance with this opinion.

¶ 39 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and District Judge PAGE concur in Chief Justice DURHAM's opinion.

¶ 40 Justice NEHRING did not participate herein; District Court Judge RODNEY J. PAGE sat.