**2014 UT App 268**

# THE UTAH COURT OF APPEALS

JUANA MERCADO,
Petitioner,
*v.*
LABOR COMMISSION, AUTOGRILL GROUP, AND HARTFORD
INSURANCE COMPANY OF THE MIDWEST,
Respondents.

Memorandum Decision
No. 20130859-CA
Filed November 14, 2014

Original Proceeding in this Court

Daniel F. Bertch and Kevin K. Robson, Attorneys
for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Theodore E. Kanell and Daniel E. Young,
Attorneys for Respondents Autogrill Group and
Hartford Insurance Company of the Midwest

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR.
concurred.

ORME, Judge:

¶1     Juana Mercado seeks judicial review of the Utah Labor Commission's denial of permanent total disability benefits relating to her 2011 industrial accident. We uphold the Commission's decision.

¶2      Mercado, who according to her brief is illiterate and speaks only Spanish, was born in Peru in 1938.[1] In Peru, Mercado worked as a fruit vendor for more than thirty-five years, "buying fruit from a wholesaler and reselling it." When she was fifty-eight years old, Mercado immigrated to the United States. Mercado first worked as a clerk for Deseret Industries, and then she packaged medicine for a pharmaceutical manufacturer.

¶3      In March 2000, Mercado began working as a dishwasher for an airport restaurant operated by Autogrill Group. Her duties included scraping food off dishes, loading the dishes onto a wheeled rack, and pushing the rack into the dishwashing machine. Because Mercado was "fragile," her co-workers routinely helped her "lift things that were heavy," like "equipment" and "parts." In May 2011, Mercado fell at work and broke her left arm. More specifically, she was diagnosed with a "three-part fracture of the left humerus as well as effusion and tendinopathy in her left shoulder and diffuse osteopenia." Mercado underwent surgery to repair her arm in June 2011.[2] About a month after her surgery, Mercado's doctor released her to light-duty work and she returned to work wearing a sling on her left arm. By November 2011, Mercado was performing her regular work duties, and in February 2012, her doctor confirmed that she was released to regular-duty work. In his February 2012 assessment, Mercado's doctor "specifically noted that [she] was not required to do heavy lifting in her position with Autogrill and . . . that she could continue working there." After Mercado returned to work, she was again "accommodated by other employees lifting the heavy pots and pans."

---

1. "In reviewing the decision of the Commission, we view the facts in the light most favorable to the Commission's findings." *Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 2 n.1, 326 P.3d 678.

2. Autogrill's workers' compensation carrier covered the cost of Mercado's surgery and related medical care as well as temporary disability benefits during the period of her convalescence.

¶4 In May 2012, Autogrill closed its airport location because of changes to the food services area of the airport. As a result, Autogrill laid off all of its airport employees. At that time, the airport's Senior Food and Beverage Manager spoke with Mercado individually about her re-employment with Autogrill because "she was interested in [Mercado's] well-being." The manager provided Mercado with a telephone number to call for updates about being rehired after the airport changes were finished. In July 2012, Mercado filed an application for permanent total disability benefits.

¶5 To establish entitlement to permanent total disability benefits under the Workers' Compensation Act, an employee must demonstrate by a preponderance of the evidence that "(i) the employee sustained a significant impairment or combination of impairments as a result of the industrial accident . . . ; (ii) the employee has a permanent, total disability; and (iii) the industrial accident . . . is the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis 2011). To establish the existence of a total permanent disability under section 34A-2-413(1)(b)(ii), the employee must prove that

> (i) the employee is not gainfully employed;
> (ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;
> (iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . that is the basis for the employee's permanent total disability claim; and
> (iv) the employee cannot perform other work reasonably available, taking into consideration the employee's age, education, past work experience, medical capacity, and residual functional capacity.

*Id.* § 34A-2-413(1)(c) (subsection (iv) reformatted for readability).

¶6      The Administrative Law Judge (the ALJ) denied Mercado's claim, finding that Mercado "failed to demonstrate that she has a limited ability to do basic work activities and an inability to perform former work" under subsections 34A-2-413(1)(c)(ii) and (iii). Based on those findings, the ALJ also found that Mercado failed to demonstrate that the Autogrill accident was the direct cause of Mercado's apparent unemployability or that the accident resulted in her permanent total disability under subsection 34A-2-413(1)(b)(iii). Mercado appealed to the Commission, which affirmed the ALJ's decision, concluding that Mercado had shown that she "is limited in her ability to do basic work activities" but that she failed to demonstrate both that her "left-arm injury prevented her from performing the essential functions of her job" and that her "work accident was the direct cause of her alleged disability."

¶7      In this judicial review proceeding, Mercado first argues that the Commission erred by finding that her left-arm injury did not prevent her "from performing the essential functions of the work activities for which [she] has been qualified until the time of the industrial accident." *See id.* § 34A-2-413(1)(c)(iii). "[T]he question of whether an employee can perform the 'essential functions' of prior employment is a factual determination that should be overturned . . . only if substantial evidence fails to support it." *Martinez v. Media-Paymaster Plus*, 2007 UT 42, ¶ 30, 164 P.3d 384. "Substantial evidence exists when the factual findings support more than a mere scintilla of evidence . . . though something less than the weight of the evidence. An administrative law decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." *Id.* ¶ 35 (omission in original) (citations and internal quotation marks omitted).

¶8      The Commission determined that Mercado was capable of performing the essential functions of her position with Autogrill once her broken arm had healed. Specifically, the Commission

found that Mercado's primary duties as a dishwasher "entailed scraping food off of dishes and loading the dishes onto a wheeled rack that she pushed into a dishwashing machine." The Commission also considered reports from Mercado's doctor, which stated that Mercado was medically stable and able to return to her regular work activities as of February 7, 2012. And she did, in fact, return to her job with Autogrill and continued her employment there for over three months before being laid off. Mercado's doctor specifically noted that Mercado's position at Autogrill was "not a very heavy work position, and thus she is able to continue in her previous work position" with no restrictions. Based on Mercado's doctor's note that Mercado was not required to do any heaving lifting after her accident, the Commission found that "lifting pots and pans was not truly an essential function of [Mercado's] job if Autogrill was content to assign such a task to other employees." Rather, Mercado "required a relatively minor adjustment to her work—lifting pots and pans—while she successfully performed her other duties."

¶9     Mercado argues that the Commission's "laser-like focus" on her specific job duties at Autogrill misses the mark and that the true question is whether she can "work at a general category or class of jobs" for which she was previously qualified, i.e., as a restaurant kitchen worker. Mercado contends that the accommodations Autogrill provided to her demonstrate that she was performing "a sliver of the regular job of dishwasher." Moreover, Mercado argues, "[t]he only kitchen dishwasher job in Utah where [she] could work was at Autogrill, because of the accommodations they gave her." We are not convinced. While it is unlikely that every restaurant in Utah would make accommodations for Mercado, the propositions that no restaurant in Utah would make similar accommodations and that all dishwasher positions entail heavy lifting are not supported in the record before us.

¶10    Most importantly, Mercado was no more limited in her ability to perform her job functions after her accident than she was

before it. The manager testified that prior to Mercado's accident, she was already limited in her ability to lift heavy objects:

> [S]he's an elderly woman so she's fragile . . . . We'd help her . . . lift things that were heavy all the time. Things that were above her head, like up on a high shelf. Stainless steel, half-size pans. Not very big, so to speak.
> But either way help her out, . . . picking up . . . equipment, parts that maybe . . . were heavy for her. You know, just things like that.

When asked how Mercado appeared to be working after her accident in comparison to before the accident, the manager testified:

> Um, as she did normally, you know. Again, I mean, we still helped her out with heavy things. We still helped her out—I wouldn't say there was any, like, she wouldn't be able to move it. . . . She moved it minimal. But like I said, there wasn't anything that she had to carry or lift, because we would help her out with that. . . . I would say that she was normal.

Thus, both before and after her accident, Mercado received occasional help from her co-workers in lifting heavy items, a circumstance that actually seems rather unexceptional when an older, frailer worker is surrounded with younger, stronger co-workers.

¶11   Despite Mercado's argument that she was performing "a sliver of the regular job of dishwasher" because she could not lift heavy items after her injury, the record demonstrates that her post-injury performance was essentially unchanged from the way she performed her job for more than a decade before her accident. During that period, too, she could not lift heavy items. But Mercado continuously worked at Autogrill for about eleven years

before her accident, with her co-workers' assistance in lifting heavy items, which supports the conclusion that Mercado was able to perform the essential functions of her position before and after her accident, i.e., "scraping food off of dishes and loading the dishes onto a wheeled rack that she pushed into a dishwashing machine." There is no evidence that Mercado could no longer perform these core duties after her accident. Accordingly, the fact that Mercado received continued help from her co-workers in lifting heavy items after her accident does nothing to refute the Commission's conclusion that Mercado was still able to perform the essential functions of her dishwasher position with Autogrill once her arm stabilized and she returned to work.

¶12    The Commission also briefly addressed the "odd-lot" doctrine from *Olsen v. Labor Commission*, 2011 UT App 70, 249 P.3d 586. In *Olsen*, a worker was able to continue in his job after an industrial accident cost him an arm. *Id.* ¶¶ 4, 7. We considered whether his return to work signified that he could perform the duties generally required in his occupation.[3] *See id.* ¶ 18. We explained that

> [t]he fact that an employee returned to work for some period of time following his industrial injury does not automatically preclude him from claiming permanent total disability benefits at a later date if he continues to suffer substantial pain throughout the period of his continued employment or if his industrial injury worsens to the point that he is no longer able to maintain regular employment.

*Id.* ¶ 20. Thus, "a claimant is not required to continue working merely because someone is willing to hire him if he must exert superhuman efforts . . . in order to do so." *Id.* (citation and internal

---

3. "Odd-lot" is a peculiar—and not very apt—term. But it has deep roots. *See generally Olsen v. Labor Comm'n*, 2011 UT App 70, ¶ 11 n.1, 249 P.3d 586.

quotation marks omitted). Rather, a claimant's return to work "must be considered in concert with the *condition* under which [the claimant] continued his employment." *Id.* (emphasis and alteration in original) (citation and internal quotation marks omitted).

¶13 In this case, the Commission found that Mercado failed to show that her physical condition deteriorated after the accident to the point that she became "unable to maintain employment." And Mercado admitted that she was physically able to continue working for Autogrill after her injury. Moreover, although Mercado told her doctor that she had "some pain at night," she also told him it was "tolerable." Mercado presented no evidence that she was in "substantial pain." *See id.* Finally, Mercado returned to work at Autogrill under the same condition—receiving help from her co-workers in lifting heavy items—as before her accident. Therefore, the Commission had a sufficient basis for denying Mercado benefits under the odd-lot doctrine.

¶14 Based on the foregoing, we conclude that substantial evidence supports the Commission's finding that Mercado could still perform the essential functions of work for which she was qualified at the time of her accident.[4] It is the closure of Autogrill's

_____

4. In regard to Mercado's prior work as a fruit vendor in Peru, the Commission determined that while Mercado "has not worked buying and selling fruit for many years," "the implication that her age, lack of education and diminished eyesight disqualified her from such work is unconvincing because such characteristics did not prevent her from working for Autogrill." Thus, the Commission concluded, Mercado is still able to perform the essential functions of a fruit vendor. Because we conclude that Mercado is still able to perform the essential functions of a dishwasher, we do not address in full the Commission's finding that Mercado could perform the essential functions of a fruit vendor. It does appear, however, that the Commission's focus was misplaced. The kind of one-person roadside fruit vending that Mercado undertook in Peru is simply not a viable employment

(continued...)

airport operation—not Mercado's broken arm—that explains the loss of her position with Autogrill.[5]

¶15  Mercado next argues that the Commission erred by finding that Mercado's left-arm injury was not the direct cause of her permanent total disability under section 34A-2-413(1)(b)(iii). We will disturb the Commission's factual findings only if they are "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011). As previously discussed, "[s]ubstantial evidence exists when the factual findings support more than a mere scintilla of evidence . . . though something less than the weight of the evidence." *Martinez v. Media-Paymaster Plus*, 2007 UT 42, ¶ 35, 164 P.3d 384 (omission in original) (citation and internal quotation marks omitted).

¶16  The Commission found that "[t]he evidence presented casts doubt on a causal connection between [Mercado's] work accident and any disability." Mercado testified that she was "capable of continuing to work for Autogrill [at the time its airport business was closed], but that it was communicated to her that she would receive a call to return to work when the restaurant reopened." The manager gave "credible testimony"—in the words of the Commission—that she gave Mercado a number to call to inquire about being rehired, but Mercado never called. Based on this evidence, the Commission determined that "neither the work accident nor slow-developing consequences from the accident

---

4. (...continued)
option in Salt Lake County. Even if Mercado can still perform the essential functions of a Peruvian fruit vendor, the notion that she can support herself in such a position in this day and age, and in this locale, seems unrealistic.

5. Indeed, Mercado acknowledges in her brief that "[p]roof of withdrawal from the labor market due to non-medical reasons is proof that the 'industrial accident' is not the 'direct cause' of 'disability,' i.e., an inability to participate in the labor market."

ultimately led to [Mercado] becoming unable to work. Rather, it seems [Mercado] did not follow the specific instructions given to her in order to return to her position with Autogrill."[6]

¶17    Mercado argues that there is no evidence that Autogrill would have rehired her had she reapplied for her dishwasher position. But there is also no evidence that she would not have been rehired had she accepted the invitation to call back and to reapply in timely fashion. In any event, she has not provided any evidence that her injury was the direct cause of her inability to work at Autogrill once it re-opened, or anywhere else for that matter. The record as a whole demonstrates that Mercado's inability to work is more causally linked to her inability to find work by reason of her age and frailty than it is to an inability to perform work specifically because of her injury.[7] Thus, the

---

6. Mercado testified that she could still do the work she did when employed by Autogrill and that she would return to work—and could work—if the same position were offered to her.

7. The Workers' Compensation Act was not created to provide compensation during periods of unemployment arising from circumstances unrelated to workplace injuries or to provide compensation during retirement. Rather, the purpose of the act is to provide an injured employee with "an income during the period of his total disability as well as compensation for any resulting permanent disability, to eliminate the expense, delay, and uncertainty of the employee having to prove the employer's negligence, and to place the burden of industrial injuries on industry." *Merrill v. Utah Labor Comm'n*, 2009 UT 26, ¶ 24, 223 P.3d 1089 (citation and internal quotation marks omitted). "In exchange for their right to sue, injured workers receive compensation for damages incurred by an on-the-job injury including compensation for the injury itself; medical, nurse, and hospital services; and medicines." *Id.* ¶ 25. *See also* Utah Code Ann. § 34A-2-401 (LexisNexis 2011) (describing the benefits provided to an employee injured in the course of employment). As we previously noted,

(continued...)

Commission's determination that Mercado failed to show that her work accident was the direct cause of her claimed permanent total disability, or even that she is permanently and totally disabled, is supported by substantial evidence.

¶18  We conclude that substantial evidence supports the Commission's conclusions that Mercado could still perform the essential functions of work for which she was qualified at the time of her accident and that Mercado's accident was not the direct cause of the permanent total disability she now claims. Accordingly, we decline to disturb the Commission's decision.

───────────

7. (...continued)
Autogrill's workers' compensation carrier paid for Mercado's medical expenses, including surgery to repair her arm, as well as for temporary disability benefits while Mercado was recovering from her injury. Mercado, therefore, has received the intended benefits of the workers' compensation scheme. Consequently, any of Mercado's ongoing needs resulting from her age and general frailty are not covered by workers' compensation but hopefully have been—or will be—addressed by other governmental programs, supportive family members, or charitable organizations. As was recognized at oral argument, Mercado's lifelong hard work and continued determination to be economically self-sufficient make her very deserving of assistance and support. Nothing in this decision confirming that she is not entitled to a particular benefit from a particular program should be taken to suggest otherwise.