LOGAN CITY SCHOOL DIST. v. KOWALLIS et al.

No. 5953. Decided February 28, 1938. (77 P. [2d] 348.)

344

*Leon Fonnesbeck*, of Logan, for appellants.

*Young & Bullen*, of Logan, for respondent.

LARSON, Justice.

Appeal from a decree of the district court of Cache county granting an injunction. The facts follow: Logan City is a city of the second class, and, as such, constitutes a city school district. All of Cache county outside of Logan City constitutes the Cache County School District. The defendant Karl A. Kowallis, with his family, including the minor children Gertrude, Ivy, and Frederick Kowallis, also named as defendants, has his home in River Heights just outside the boundary limits of Logan City School District, the plain-

tiff herein. The defendant Noah A. Larsen, with his family, including a minor child, Charlotte Larsen, also named as a defendant, has his home south of Logan City and without the boundary limits of the plaintiff school district. Karl A. Kowallis, defendant, operates a printery within Logan City, spends most of his time there, and is a substantial taxpayer within the city. Defendant Noah A. Larsen conducts within Logan City a retail hardware establishment and is a heavy taxpayer. The Kowallis and the Larsen children have always attended the Logan schools. In September, 1936, the Logan City Board of Education adopted a ruling that all pupils, not residents of the district, who attended the city school be required to pay a nonresident fee of $35 for the elementary grades; $45 for junior high; and $55 for senior high school.

In the fall of 1936 the defendants Ivy and Frederick Kowallis and Charlotte Larsen matriculated in the Logan High School, and defendant Gertrude Kowallis in the Logan Junior High School, all without payment of the nonresident fees. Later the school authorities ordered the children to withdraw from school until the fees were paid. Upon refusal of the parents to permit the children to withdraw from school or to pay the fees, this action was commenced to enjoin the children from attending the city school until the fees were paid.

Upon motion of the defendants, the Cache County School District was made a party, and a cross-complaint was filed against it by the individual defendants to compel the County School District to pay to the City School District the amounts received by the county schools from the state high school fund, and the school equalization fund, by virtue of having enumerated in its school census the three Kowallis children and the Larsen child. The trial court granted the injunction as sought by plaintiff and dismissed the cross-complaint against the Cache County School District. The defendants Kowallis and Larsen appeal.

Fifteen errors are assigned and argued, but for clarity and convenience we shall treat them under the real questions they present, namely: (1) Under the provisions of the State Constitution, is every public school within the state open to any child of school age resident within the state, free; that is, without payment of tuition or entrance charges? (2) Can the Board of Education of any school district lawfully exact a registration, tuition, or nonresident fee from pupils who matriculate in its school but are not resident within the district, over and above that fee which it exacts from pupils resident within the district? Any other questions involved are merely corollaries of these questions, and will be answered in the discussion of them.

(1) This question really involves the meaning of the provisions of the State Constitution with respect to the schools being *free* and *open* to all children of the state. The constitutional provisions with respect to schools are in article 10, and are as follows:

Section 1: "The Legislature shall provide for the establishment and maintenance of a *uniform system of public schools,* which shall be *open to all children* of the State, and be *free from sectarian control.*" (Italics added.)

Section 2: "The public school system shall include kindergarten schools; *common schools, consisting of primary and grammar grades;* high schools, an agricultural college; a university; and such other schools as the Legislature may establish. *The common schools shall be free.* The other departments of the system shall be supported as provided by law." (Italics added.)

Section 3 deals with school lands; section 4 confirms the location, franchises, etc., of the University and Agricultural College; section 5 refers to land grants; and section 6 reads: "In cities of the first and second class the public school system shall be controlled by the Board of Education of such cities, separate and apart from the counties in which said cities are located."

This article of our Constitution is entitled "Education," and provides that the control of the public school system,

which includes schools of all kinds or grades, is vested in the Legislature. It imposes upon the Legislature the duty of providing a system of public schools as enumerated in section 2; that such system must be uniform; that it must be open to all children of the state; that it must be free from sectarian control. It is further provided that the Legislature shall provide or prescribe ways or means for the support and maintenance of all the schools, limited only by the fact that the *common schools* shall be free. That is to say, no act can be passed by legislative edict or otherwise imposing upon any child within the state any charge, by fee or otherwise, as a condition for, or limitation upon, attending the common schools; that is, the grammar and primary grades. Here, then, are the two clauses from which this controversy arises: Firstly, the schools must be *open* to all children; and, secondly, the common schools shall be *free*. The points raised on appeal necessitate that these clauses be clarified or defined in their scope and meaning.

The requirement that the schools must be open to all children of the state is a prohibition against any law or rule which would separate or divide the children of the state into classes or groups, and grant, allow, or provide one group or class educational privileges or advantages denied another. No child of school age, resident within the state, can be lawfully denied admission to the schools of the state because of race, color, location, religion, politics, or any other bar or barrier which may be set up which would deny to such child equality of educational opportunities or facilities with all other children of the state. This is a direction to the Legislature to provide a system of public schools to which all children of the state may be admitted. It is also a prohibition against the Legislature, or any other body, making any law or rule which would deny admission to, or exclude from, the public schools any child resident of the state, for any cause except the child's own conduct, behavior, or health. The schools are open to all children of the state when there are no restrictions on

any child, children, or group of children which do not apply to all children in the state alike. The provision for being open does not apply to matters financial; it does not mean they must be free. It simply means that all children must have equal rights and opportunity to attend the grade or class of school for which such child is suited by previous training or development.

It is also noted that there is no requirement that every school building shall be open to every school child in the state. The provision is that the system of public schools shall be open to all children of the state. There shall be provided, for each child in the state, a school suitable to its development and training, and as reasonably convenient for attendance as is practicable, which school such child shall have a right to attend. And when the public schools are open to all children on the same and equal terms, compliance has been had with this clause of the Constitution. It is admitted in the instant case that there is established and maintained in the Cache County School District a junior and a senior high school, reasonably convenient, of proper grade and class and equal standing to the Logan schools, open to the children of Kowallis and Larsen, and that is all they can demand under the provision that the public schools shall be open to all children of the state.

But it is urged that the schools must be *free* and if entrance or tuition charges are made against these children, the schools are not free. We call attention to the language of the Constitution, quoted supra, to the effect that the *"public schools, which shall be open to all children of the state,"* section 1, art. 10, and *"The common schools shall be free.* The *other departments of the system shall be supported as provided by law."* Section 2, art. 10. By the same section the term *"common schools"* is defined to mean the grammar and primary grades, which at the time of the adoption of the Constitution had a definite and positive meaning in our school set-up. The primary grades

were the first to fourth grades, inclusive, and the grammar grades were the fifth to eighth grades, inclusive. As to those grades, denominated the common schools, the Constitution lays a mandatory duty upon the Legislature. It must provide for the establishment and the maintenance of common schools for all children of the state, which must be maintained as free institutions of learning. The Constitution also sets up a positive prohibition against the state, and any other body or person, exacting a charge or fee from any child as a prerequisite to the right and privilege of attending the common schools; that is, the eight grades or their equivalents. There is no inhibition in the Constitution against the Legislature prescribing or authorizing reasonable fees or charges for attendance at any of the other units of the public school system. The Legislature has spoken in regard to such matters. It has specifically provided for such fees at the University, Agricultural College, Branch Agricultural College, and the junior colleges. Chapter 2, title 75, R. S. Utah 1933, 75-2-1 et seq., and chapter 49, Laws of Utah 1933. As to high schools throughout the state, it is provided in section 75-9-7, R. S. 1933, that within the school districts of the state, the public schools shall be free, and the public schools of the district include the high schools. The Legislature having therefore provided that the high schools, like the common schools, shall be free, no school district or board of education has authority to require or collect, as a prerequisite to attendance at such school, any registration, entrance, or tuition fees.

(2) We come now to question (2), as to the right of a district board of education to exact a nonresident fee from pupils living outside the district but attending schools within the district. As indicated above, the Legislature is by the Constitution charged with the duty of providing for the establishment and maintenance of a system of public schools. At the time of statehood, there was existent within the state a system of schools and educational facilities which

had grown up from the days of the earliest settlements, among a people to whom the dissemination of knowledge and the acquirement of learning was not only a right and privilege, but a solemn and exalted duty. Schools began in this commonwealth with private schools, where a teacher would open up a school for teaching children, each family paying to the teacher whatever it could afford for the child or children who attended. In 1850, 9 Stat. 453, Congress provided for the organization of the territory of Utah, and the territorial government was set up in 1851, the first territorial Legislature meeting in September, 1851, and continuing until February following. In 1852, an act was passed and approved by the Governor which required the county court in each county to divide the county into proper school districts, and provided for the election of three trustees in each school district. Such trustees were empowered to levy a tax to build and keep in repair their schoolhouses. The county court was authorized to appoint three competent persons to examine and certify the qualifications of school teachers within the county. Such schools, established and supported exclusively within the district so created, were called "District Schools." Laws Utah 1852, p. 97.

In 1854, provision was made for the appointment of a territorial superintendent of *common* schools. Later, provision was made for the biennial election of a territorial superintendent of *district* schools, and also, for the election within each county of a superintendent of district schools. It was also provided that the trustees of any school district "may at their option collect tuition fees." Chapter 2, tit. 12, § 591, Comp. Laws Utah 1876. All schools properly organized by the trustees were now given the legal designation of "District Schools." The right to charge tuition fees was perpetuated to the trustees in the Compiled Laws of 1888, § 1914, but it was now provided that trustees could admit to the schools of the district, children resident in other districts, and trustees could also transfer to another district the money due by apportionment to the children

attending school in such other district. In 1890, Laws 1890, c. 72, the Legislature first established a uniform system of *free* schools, which abolished the power of trustees to charge tuition fees against pupils resident within the district; and provided that children could not attend school in a district other than that of their residence, except upon consent of the trustees of such district. In 1896, the statute provides, inter alia:

"It shall have power to admit to the schools in the district pupils from other districts when it can be done without injuring or over-crowding such schools, and shall have power to make regulations for their admission and to charge and collect reasonable fees for their tuition. It shall have power to arrange with the board of an adjacent district for sending to such district such pupils as can be conveniently taught therein, when for any cause such pupils cannot be conveniently taught in the district where they reside, and for paying their tuition. It shall also have power *to make proper and needful rules for the assignment and distribution of pupils to and among the schools in the district and their transfer from one school to another.*" Chapter 130, art. 6, § 55, Laws Utah 1896.

In 1905, Laws 1905, c. 107, the Legislature again reiterated the declaration that the schools in each district were free to all the children in the district between the ages of 6 and 18 years, which act has been continued in force to the present time, and now covers all schools of the district. In 1897, the Legislature provided that public schools in city school districts should be free to all resident children and all nonresident children whose parent or guardian was a taxpayer in the city. This remained on the statute book until 1929, Laws 1929, c. 50, when it was amended to declare such schools free only to residents of the district, thus placing the city school district on the same basis with reference to being free as were the county school districts.

The legislation enacted in 1911, Laws 1911, c. 31, with respect to high schools, gave the board of education the right "to admit [to its high school] students from other high school districts upon such terms as may be equitable and

just." Section 12. This was repealed in 1915, Laws 1915, c. 78, placing the high school on the same plane as the common schools. From the beginning of the public school system, provisions were made by law for the distribution of all school funds coming into the treasury of the territory to all the school districts in proportions designed to equalize the benefits given the school children in all districts. Chapter 2, title 12, Comp. Laws Utah 1876, § 589 et seq. This policy continued after statehood. The Constitution itself provides for distribution of the income of the State School Fund among the districts on a per capita basis. Article 10, § 3, as amended in 1930. The state high school fund, created in 1915, Laws 1915, c. 110, provides that the state shall pay from taxes levied for that purpose, to each school district, a sum equal to its proper proportion of such funds. The Constitution was amended in 1930 to provide a state fund of $25 to each district for each child of school age resident in the district; and a further fund, called the equalization fund, under which the state raises by taxation a sum equal to $5 per capita for all school children within the state. Such fund is then distributed by the State Board of Education among the school districts, not on a per capita basis, but in such proportions as shall best tend to secure to the children of all districts equal school facilities and opportunities for intellectual development. It is designed to give each district the ability to provide its children with the same grade or class of school, teaching facilities, and opportunities as are afforded in any other district.

The history of educational development in Utah, from the first settlements to the very latest enactments, shows a devotion to the ideal of intellectual development and a constantly growing effort to insure all children in the state equality of educational opportunities and privileges as a fundamental and inalienable right, free and open to all alike. The state has now reached a point where such objective has been realized as to common schools, now generally spoken of as elementary schools, and high schools; and no tuition or

registration or entrance fees can lawfully be charged any of the children of the state as a prerequisite to attendance at any public school of primary or grammar grades or of high school class or rating.

Can, then, one school district exact a fee from students of other districts as a condition for admission to its high schools? As shown in the foregoing historical development, our school system originated and developed as *district* schools, each district being somewhat a local unit of self-government. Our development has eliminated many of the local rights and powers and we now have, in effect, a state system of public schools rather than the old theory of *district* schools. Yet districts, while modified in their powers and prerogatives, have been perpetuated as administrative units of the state system and given certain local rights, all designed for, and conducive to, better administration of schools—the more efficiently to provide the children with the educational opportunities justly and constitutionally theirs. So, provision is made for incurring district indebtedness, erecting or repairing buildings within the district, for the employment of district teachers, and for the levying of district taxes, all within the limitations fixed by general law of the state. This is all done to secure more efficient administration and attention to details, so local needs may be met promptly and in such measure as to meet the demands and to keep the control of such local matters close to the children and the people most interested in them, that none may be neglected, hampered, or denied.

In the orderly administration of the school system, to prevent overcrowding at some schools, to insure an adequate teaching faculty, rooms, seats, equipment, grounds for recreation, to protect health, and secure to all children the greatest possible amount of contact with, and personal attention from, the teachers, that their individual needs may be met (as well as convenience in attending school), districts are maintained, and even assign-

ment of pupils within a district to particular schools is authorized and necessary. The statute in 1896 (quoted supra) expressly granted such rights to school boards. The Compulsory Education Law, enacted in 1905, Laws 1905, c. 95, required that every child between the ages of 8 and 16 years must attend a school within the district in which such child resided, unless excused by virtue of certain special provisions of the statute. This act was re-enacted in the Compiled Laws of 1917, § 4740, and is found in the 1933 Revised Statutes, 75-25-1, in substantially the same form. A review of all the statutory enactments from the beginning shows a recognition of the policy that children must attend school within the district in which they reside, whenever there is provided within such district, schools of proper grade and class to meet their needs and requirements. When their home district provides a school suitable in its curriculum, faculty, and facilities for their stage of educational growth and development, free and open to them, and reasonably convenient for attendance, they are given all the Constitution assures or provides for them. To secure to every child in the state the maximum benefit of the school system, the assignment of children to particular schools is often essential. Economy and efficiency in school operation and administration, as well as effectuating and making possible the harmonious development and growth of all school children, would be seriously impaired were students permitted to shift or change, at their own volition, from one school to another. The Cache County School District, having provided adequate schools and facilities, equal to those of Logan City, open and free and reasonably convenient for attendance of all children within such district, all constitutional and statutory requirements have been met, and no child within such district has a legal right to insist upon attendance at public schools elsewhere.

Since each district is charged with the duty of providing adequate school facilities for the children resident in the district, in order that such children may not be deprived of

school privileges by overcrowding of rooms, or too large attendance for the book or laboratory facilities, or imposing too many students on a teacher for efficient work, the district must have the privilege of barring nonresident students whose home district provides for them proper educational advantages. Should a school child desire to attend school in another district, he may do so by the consent of the proper officers of such district. They then can determine whether they have room and other school facilities sufficient to receive additional students and can determine the cost to the district of receiving and caring for such pupils, and so prescribe the conditions upon which such nonresident children will be received. When thereafter such child enters, it is upon an implied contract, at least, that he will comply with such conditions as have been fixed for his admission. Under the conditions above indicated, he is admitted, not upon any basis of legal right to attend, but upon a contractual basis, and he cannot continue to receive the emoluments of the contract while repudiating its obligations. If, therefore, for reasons personal to self, he would attend a school outside the district of his residence, he must meet the requirements such school may exact.

Complaint is made that the trial court dismissed the action as to Cache County School District. It was appellants' contention that if they are required to pay for the attendance of their children at the Logan schools, the county district should pay over to the city district the amounts received by it from the state $25 fund and the equalization fund, and such sum then should be credited to appellants on the amount they may be required to pay. The ruling of the trial court was not error. The matter as to which district should receive the money from the state may be a question as between the districts, but it is not involved in the dispute between appellants and the Logan City schools. If paid by the county district to the city, it would not be for the credit and account of appellants.

Appellants' contention that, although they reside outside the boundaries of the Logan City School District, they should for school purposes be considered as residents of the city, is likewise without merit.

In the briefs appellants contend, very briefly, that injunction is not the proper remedy, but that the Board of Education should sue for the nonresident fees if it is entitled to charge such fees. An examination of the record does not show this question presented in the court below, nor is it properly raised and presented in the assignments of error. There is a doubt that an injunction will lie in such case as here presented, but we do not pass upon that question because in this case it is moot. Appellants gave to the Board of Education a bond to insure the payment of the fees if it were finally adjudged that the children did not have a lawful right to insist upon attending the Logan City schools without any restrictions, limitations, or terms not exacted from children resident within the city. Upon furnishing such undertaking the children were permitted to continue their attendance at school. The only right the Board of Education now has is to demand its fees from the parents or proceed to enforce payment under the bond.

It follows, therefore, that the judgment of the trial court should be affirmed. Such is the order. Costs to respondent.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

I concur, but I withhold from my concurrence what appears to me to be an implication that if one district did not have adequate school facilities, the children of that district could be sent into another district free of charge. It appears to me the implication arises from the italicized portions of the following passages of the opinion:

"A review of all the statutory enactments from the beginning shows a recognition of the policy that children must attend school within the district in which they reside, *whenever there is provided within such district, schools of proper grade and class to meet their needs and requirements.*"

"The Cache County School District, *having provided adequate schools and facilities, equal to those of Logan City, open and free and reasonably convenient for attendance of all children within such district,* all constitutional and statutory requirements have been met, *and no child within such district has a legal right to insist upon attendance at public schools elsewhere.*"

Personally, I have doubts whether any parent could raise the question of adequacy of schools in his district in order to justify sending his child to the school of another district. A right to visit the children of one district onto the schools of another may not arise because the first district does not meet the constitutional requirements. But those doubts do not need to be resolved nor anything contained in the opinion which by implication or otherwise might be used to support such contention.