Maria ESPINAL, Donnie James, G. Harvey Hamilton, Joyce Campbell, and Terry Hoecker, for themselves and all others similarly situated, Plaintiffs and Appellants,

v.

SALT LAKE CITY BOARD OF EDUCATION, Defendant and Appellee.

No. 890037.

Supreme Court of Utah.

Aug. 8, 1990.

Parker M. Nielson, Kent B. Linebaugh, Salt Lake City, for plaintiffs and appellants.

John E.S. Robson, M. Byron Fisher, Douglas J. Payne, Salt Lake City, for defendant and appellee.

DURHAM, Justice:

This is an appeal from an order of summary judgment in favor of the Salt Lake City Board of Education (the Board). Appellants argue that the Board violated sections of the Utah Constitution and exceeded its statutory authority in its realignment of school boundaries within the Salt Lake City School District (the district). We affirm the judgment of the trial court.

This case was originally filed in the Third Judicial District Court of Salt Lake County. Because some of the claims were based on federal law, the case was removed to the United States District Court of Utah. After consideration there, Judge David K. Winder dismissed all federal claims and remanded the case back to the third judicial district for a ruling on the state constitutional and statutory claims. Judge Daniels of the third district granted the Board's motion for summary judgment on those issues. This appeal was taken from Judge Daniels' order.

Appellants challenge the Board's decision of January 19, 1988, to realign school

boundaries within the district. Prior to that time, there were four high schools in the district—East, Highland, South, and West. Due to declining enrollment in the district, the Board decided to close South.[1] This necessitated a realignment of the boundaries for the remaining three high schools. In realigning, the Board wanted to create and maintain equal educational opportunities at each of the three remaining schools and to prevent disparities between schools. The realigned boundaries are "closed," which means that a student is required to attend a designated high school unless a showing of unusual circumstances is made. The district has maintained a closed boundary policy since 1984. One effect of the realignment is that some of the students who previously attended and live within walking distance of West are now attending East and Highland. Also, some students from areas previously within the boundary for East are now attending West. Some students who would have been able to walk to school are now being bussed to their assigned high schools.

Appellants argue that the Board's decision to realign the boundaries for the three high schools in the district (1) denied appellants their liberty to control the education of their children in violation of article I, section 7 of the Utah Constitution, (2) created a "partisan test" for attendance in the state's public school system in violation of article X, section 8 of the Utah Constitution, and (3) exceeded the Board's statutory authority as outlined in Utah Code Ann. § 53–6–20 (1987 Supp.).[2]

■ Appellants' first claim is that the realignment violated article I, section 7 of the Utah Constitution by denying them the liberty to control their children's education. This claim was raised for the first time on appeal. With limited exceptions, the practice of this court has been to decline consid-

eration of issues raised for the first time on appeal. *Pratt v. City Council,* 639 P.2d 172 (Utah 1981); *see also Collier v. Frerichs,* 626 P.2d 476, 477 (Utah 1981). We therefore do not address this claim.

■ Appellants' second claim is that the Board's realignment violated article X, section 8 of the Utah Constitution. This section provides: "No religious or partisan test or qualification shall be required as a condition of employment, admission, or attendance in the state's educational systems." Appellants argue that the factors the Board considered in realigning the boundaries are partisan in nature and that consideration of those factors thus created a partisan test for their children's attendance at the high schools in the Salt Lake City School District. In attempting to create three relatively equal high schools, the Board considered several demographic factors for each high school, including the achievement levels of students, the racial/ethnic mix of students, the overall number of students, and the concern for neighborhood cohesiveness. Although this court has never specifically defined the term "partisan" as used in this section of our constitution, we are convinced that the foregoing factors considered by the Board do not come within any possible construction of that language. We therefore reject appellants' second argument.

■ Appellants' final argument is that the Board's boundary realignment exceeded its statutory authority under Utah Code Ann. § 53–6–20 and that, even if the Board was acting within its statutory authority, the setting of the boundaries was an arbitrary and capricious decision. The standard for reviewing school board decisions has been clearly outlined by this court.

[I]f the action of the board of education is within the powers conferred upon it by the Legislature, and pertains to a matter

---

1. The district reached a peak enrollment of 42,-000 students in the 1957–58 school year. District enrollment at the time the briefs in this case were filed was 24,300 students. This decline over time had resulted in the underutilization of school facilities, and the district was facing a potential reduction in state funding because the schools would be operating at less

than 70 percent of maximum student capacity. Utah Code Ann. § 53A–17–104 (1989).

2. Section 53–6–20 was recodified as section 53A–3–402 in 1988. We will refer to the earlier section, which was in effect at the time of the boundary decision.

in which the board is vested with authority to act, the courts will not review the action of such a board to substitute its judgment for that of the board as to matters within its discretion.

*Beard v. Board of Educ.*, 81 Utah 51, 59, 16 P.2d 900, 903 (1932). Section 53–6–20 lists the specific powers granted to local school boards and provides in a final residuary clause that a school board may "do all things necessary for the maintenance, prosperity, and success of the schools and the promotion of education." Utah Code Ann. § 53–6–20(14) (1987 Supp.). Appellants claim that the Board's realignment was not "necessary" for any of the purposes listed in the residuary clause.

When construing an earlier, almost identical version of section 53–6–20, this court noted the importance of giving broad discretion to school boards in their decision-making capacity.

> [I]n harmony with the import of the statutes [governing the authority of school boards] is the fact that it is inherent in the nature of the board's function in managing school district business that it have a broad latitude of discretion in order to carry out its objective of providing the best possible school system in the most efficient and economical way. Indeed it should be said that the board not only has this prerogative, but it could not divest itself of this duty. It is the policy of the law not to favor limitations on the powers of the administrative body, but rather to give it a free hand to function within the sphere of it responsibilities. For that reason, it is to be assumed that the board has and retains its prerogative of using its best judgment as to what course will prove to be of greatest advantage in serving the interests of the district in the long run.

*Ricker v. Board of Educ.*, 16 Utah 2d 106, 110–11, 396 P.2d 416, 420 (1964) (footnotes omitted). We reemphasize this reasoning and hold that the Board's decision to realign is clearly within the objective of "providing the best possible school system in the most efficient and economical way" and is within the statutory authority of the Board under section 53–6–20(14).

Appellants' claim that the realignment decision was arbitrary and capricious is meritless. The Board's decision was a thoughtful and deliberate one. In 1987, the Board voted to close one of the four high schools in the district, recommending that the school be South. The Board then voted to keep South open for the 1987–88 school year, during which time an independent citizens' committee would review and either accept or reject the closure recommendation. The Board hired an outside consultant to work with this committee. After its study, this committee agreed with the Board's recommendation that South be closed and recommended that the closing be used to create "improved educational opportunities for all the high school students in Salt Lake City" and that the Board avoid creating attendance boundaries which would concentrate students from lower socioeconomic groups, students from more affluent backgrounds, or minority students in any one of the remaining high schools.

The Board unanimously adopted the following statement of purpose for its deliberations regarding realignment of school boundaries:

> It is the objective of the Salt Lake City Board of Education to have three outstanding comprehensive high schools that are comparable in academic standards, course offerings, extracurricular programs, quality of staff, learning climate and student achievement. While recognizing that each school should be free to develop its own unique educational environment, the Board believes that any high school student in the city, regardless of place of residence, should have opportunities for education and participation in school activities similar to those of any other student in the District.

The Board gave this statement of purpose, along with a statement of goals and a list of criteria to be considered, to a citizens' committee organized to make a recommendation on realigning the boundaries. One of the Board's stated goals was "to develop three high schools with a balanced mix of

resident high, middle and low achieving students [in order] to develop educational and cost-effective curricula which address the needs and challenges of all district students." The Board urged the committee to suggest boundaries which would provide parity among the three remaining high schools as to student population, achievement levels, and minority student populations. The Board also asked the committee to consider neighborhood cohesiveness in choosing a proposal for boundary realignment.

This committee presented several proposals to the Board, indicating how many members supported each proposal. On January 19, 1988, the Board, after additional public comment and hearings, adopted the boundary proposal which had received the most affirmative votes from the boundary committee. The boundary proposal met the criteria established by the Board and resulted in the bussing of only 4 percent more students than the minimum amount required by the closing of South.

The Board's boundary realignment decision was made after months of study, public input, and deliberation. A majority of the Board approved the realignment, believing that it would improve the quality of education for all students in the district. *See Allen v. Board of Educ.*, 120 Utah 556, 562, 236 P.2d 756, 759 (1951) (holding that a school board's decision to close a junior high school and require students to be bussed to another junior high was within the board's power, was made "after a careful survey of the educational needs of the district," and "was based not on speculation but upon the dictates of abundant experience"). The Board's boundary realignment decision was neither arbitrary nor capricious.

Appellants in this litigation have depicted some of the student characteristics considered by the Board as negative and somehow "inferior." These include lower scores on standardized tests, lower socioeconomic status, and minority background. Appel-

lants have then relied on this depiction to argue that the Board inappropriately considered these "negative" characteristics in realigning the boundaries. There is nothing in the record suggesting that the Board considered one group of students superior or inferior to another group. That characterization has come solely from appellants. In fact, the record shows that the Board viewed these *differences* among students as a potential strength of the district and of each of its high schools. The Board properly considered demographic factors in order to create a diversified educational experience and provide equal educational opportunities for each high school student in the Salt Lake City School District.

The district court's order of summary judgment is affirmed.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

BENCH, Court of Appeals Judge: (concurring).

I fully concur with the discussion of the issues under article X, section 8 of the Utah Constitution and Utah Code Ann. § 53-6-20 (Supp.1987). Although I reach the same result, I do not believe that the claim raised under article I, section 7 of the Utah Constitution is adequately addressed.[1]

The main opinion seems to suggest that it is purely discretionary with this court as to whether we will address an issue raised for the first time on appeal. In the interest of predictability, accountability, and fairness, I believe that the court should employ a more disciplined approach.

The general rule is, of course, that issues raised for the first time on appeal are not properly brought and will not be considered. *Wheeler ex rel. Wheeler v. Mann*, 763 P.2d 758, 761 (Utah 1988); *see also James v. Preston*, 746 P.2d 799, 801 (Utah Ct.App.1987). This general rule applies even to constitutional issues, except where (1) a person's liberty is at stake, *State v. Breckenridge*, 688 P.2d 440, 443 (Utah

---

1. Article I, section 7 of the Utah Constitution provides: "No person shall be deprived of life, liberty or property, without due process of law."

**416**

1983); *Pratt v. City Council of Riverton*, 639 P.2d 172, 174 (Utah 1981), and (2) exceptional circumstances are present, *Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990).

Appellants have claimed that the school board's action deprived them of their liberty to choose which public school their children will attend. I do not believe that appellants' liberty is at stake in this case. *See Logan City School District v. Kowallis*, 94 Utah 342, 77 P.2d 348, 351 (1938) (there is no requirement that every school building be open to every child). For this reason, I would decline to address the constitutional due process issue that has been raised for the first time on appeal. *See State in re N.H.B.*, 777 P.2d 487, 492 (Utah Ct.App.1989).

HOWE, Associate C.J., does not participate herein; BENCH, Court of Appeals Judge, sat.