2011 UT 3

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Ricky ANGILAU, Defendant and Appellant.**

**No. 20090538.**

Supreme Court of Utah.

Jan. 7, 2011.

Mark L. Shurtleff, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Ronald J. Yengich, Earl Xaiz, Elizabeth Hunt, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 The State charged sixteen-year-old Ricky Angilau with murder and other offenses in an adult criminal court. On interlocutory appeal, Mr. Angilau asks this court to dismiss the case in the district court on the basis that the automatic waiver statute [1]

---

**1.** The parties have referred to this statute, Utah Code § 78A–6–701 (Supp.2010), as "direct-file," a term generally used when the prosecutor has discretion regarding filing in adult or juvenile court. However, as the statute now stands, a prosecutor has no discretion: if the juvenile meets the criteria outlined in this statute, the prosecutor can only file in adult criminal court.

underpinning district court jurisdiction is unconstitutional. Mr. Angilau challenged the constitutionality of the statute on multiple grounds. Because we find no state or federal constitutional basis for voiding the automatic waiver statute, we affirm the district court's determination that the statute is constitutional.[2]

## BACKGROUND

¶ 2 The State alleges the following facts. In January 2009, sixteen-year-old Ricky Angilau arranged to fight another juvenile near school property. On his way to the fight, Mr. Angilau showed a friend a gun that he was carrying. While fighting, Mr. Angilau grew tired, pulled out the gun, and fired one shot in the air. He then lowered the gun, pointed it at a group of onlookers, and fired another shot that killed Esteban Manuel Saidi, another minor. Mr. Angilau fled, throwing the gun over the fence of a house he passed.

¶ 3 On January 26, 2009, the State charged Mr. Angilau in the district court under the automatic waiver statute, Utah Code Ann. § 78A–6–701(1)(a) (2008), with murder, obstruction of justice, carrying a concealed dangerous weapon, and possession of a firearm on school premises. Mr. Angilau moved to dismiss the criminal information for lack of jurisdiction, arguing that the automatic waiver statute is unconstitutional. Mr. Angilau also argued that this statute cannot be harmonized with various other statutes in Utah's Juvenile Court Act, Utah Code Ann. § 78A–6–101 to –1210 (2008 & Supp.2010).

¶ 4 The district court held that the automatic waiver statute is constitutional and interpreted relevant law in a manner to preserve the statute's operability. Mr. Angilau sought and received an interlocutory appeal of the district court's ruling.

¶ 5 After oral arguments, the Utah Legislature significantly revised the relevant statutes. See 2010 Utah Laws 38. Both parties stipulated that the amendments mooted statutory issues and some constitutional issues in this case, but differed on what constitutional issues remain. See supra note 2.

¶ 6 This court has jurisdiction under Utah Code section 78A–3–102(3)(h) (Supp.2010).

## STANDARD OF REVIEW

■ ¶ 7 "The constitutionality of a statute is a question of law that we ... review for correctness." Merrill v. Utah Labor Comm'n, 2009 UT 26, ¶ 5, 223 P.3d 1089. We are " 'guided by the well-settled proposition that all statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity.' " Id. (quoting Blue Cross & Blue Shield of Utah v. State, 779 P.2d 634, 637 (Utah 1989)); see also State v. Herrera, 1999 UT 64, ¶ 18, 993 P.2d 854 ("In testing the constitutionality of legislation, ... we construe the legislation, to the extent possible, as being in compliance with the federal and state constitutions. Given the importance of not intruding into the legislative prerogative, we do not strike down legislation unless it clearly violates a constitutional provision. We resolve any reasonable doubts concerning legislation in favor of constitutionality." (citations omitted)).

---

We refer to the statute as an "automatic waiver" to be consistent with the vocabulary used in juvenile justice literature nationwide. Such provisions are also referred to as "legislative waiver" or "statutory exclusion" statutes.

2. Much of the district court's decision was devoted to statutory issues later rendered moot by a significant revision of the code during the 2010 legislative session. See 2010 Utah Laws 38. We need not review that part of the district court's decision, because both parties have stipulated that those statutory issues are now moot. We do note that before the revisions there was some ambiguity regarding the automatic waiver statute, as manifested by the different interpretations

proffered by the State and Mr. Angilau. However, the legislative history resolves the ambiguity clearly in favor of the State's interpretation that the statute was not meant to allow prosecutorial discretion of whether to file in an adult or juvenile court where a defendant met the outlined criteria. See Audio Recording: Senate Debate on SB 111, 51st Leg. Gen. Sess. (Feb. 9, 1995) (comment of Senator Hilyard). The changes in the statutory scheme regarding the automatic waiver statute are therefore merely clarifying, and the new version is retroactively applicable to Mr. Angilau. See Salt Lake Cnty. v. Holliday Water Co., 2010 UT 45, ¶ 41, 234 P.3d 1105.

## ANALYSIS

¶ 8 Mr. Angilau, although a sixteen-year-old minor at the time, was charged as an adult with multiple offenses, including murder. The district court asserted jurisdiction under Utah's automatic waiver statute, which states in relevant part that "[t]he district court has exclusive original jurisdiction over all persons 16 years of age or older charged with ... an offense which would be murder or aggravated murder if committed by an adult." Utah Code Ann. § 78A–6–701(1) (Supp.2010).[3] Mr. Angilau argues that the statute is unconstitutional on multiple grounds.[4] Because we find no constitutional basis for voiding the automatic waiver statute, we uphold the district court's decision that it is constitutional. As explained above, we begin with the presumption that the statute is constitutional, *Merrill v. Utah Labor Comm'n*, 2009 UT 26, ¶ 5, 223 P.3d 1089, and "resolve any reasonable doubts concerning legislation in favor of constitutionality." *State v. Herrera*, 1999 UT 64, ¶ 18, 993 P.2d 854.

## I. THE AUTOMATIC WAIVER STATUTE DOES NOT VIOLATE DUE PROCESS AS APPLIED TO MR. ANGILAU

¶ 9 Mr. Angilau makes several arguments claiming that he is entitled to fundamental elements of due process in determining whether he should be under the jurisdiction of an adult or juvenile court. We examine his arguments under both the substantive and procedural due process doctrines.

A. *The Automatic Waiver Statute Does Not Violate Substantive Due Process Under Either the Utah or Federal Constitution*

■■■ ¶ 10 "When undertaking a substantive due process analysis under both article I, section 7 of the Utah Constitution and the Fourteenth Amendment of the United States Constitution, this court applies a rational basis test unless the governmental action implicates a fundamental right or interest." *State v. Candedo*, 2010 UT 32, ¶ 16, 232 P.3d 1008. If there is no fundamental right at issue, "a statute will not violate substantive due process if it is rationally related to a legitimate state interest." *Id.* ¶ 19 (internal quotation marks omitted). "[O]ur rational basis analysis is limited to determin[ing] whether the legislature overstepped the bounds of its constitutional authority in enacting [the statute at issue,] not whether it made wise policy in doing so." *Id.* (alterations in original) (internal quotation marks omitted). This court will uphold a statute under the rational basis standard "if it has a reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory." *Id.* ¶ 24 (alterations in original) (internal quotation marks omitted).

■■■ ¶ 11 Mr. Angilau argues that this case involves a fundamental right requiring a heightened standard of scrutiny. But, as will be discussed throughout this opinion, we conclude that Mr. Angilau has no fundamental right to treatment in the juvenile system. *See, e.g., State v. Mohi*, 901 P.2d 991, 1005 (Utah 1995). The juvenile system is a legislative creation, and the legislature can choose to exclude certain minors from that system so long as the exclusion is not arbitrary or impermissibly discriminatory. *State ex rel. N.H.B.*, 777 P.2d 487, 492 (Utah App.1989). Where a right is created only by statute, the legislature can certainly choose not to create it.[5] We therefore proceed with a rational basis review.

¶ 12 The essential function of the automatic waiver statute at issue in this case is to automatically place the oldest juvenile offenders who have allegedly committed the most serious crimes (murder or aggravated murder) under the jurisdiction of adult crimi-

---

3. Because changes to this statute since the time of Mr. Angilau's offense have merely been clarifying, we refer to the present version throughout this opinion. *See supra* note 2.

4. We do not address arguments mooted by the revisions to the Utah Code that occurred after oral arguments in this case. *See* Reply to State's Concurrence with Suggestion of Mootness, filed April 5, 2010; 2010 Utah Laws 38; *supra* note 2.

5. Mr. Angilau argues multiple bases for recognition of a fundamental or critical right that are addressed in Parts I.B, II.C and IV of this opinion.

nal courts. *See* Utah Code Ann. § 78A–6–701(1)(a).[6] Because there are longer sentences available in adult courts, convicted defendants can be removed from society for a greater period of time than would be possible in juvenile proceedings. Protection of society from dangerous individuals is unquestionably a legitimate government purpose, and potentially longer incarceration is rationally related to that purpose. The qualifications regarding age and severity of crime are not arbitrary, because they reasonably relate to the degree of threat to society that an individual might pose. Older children, for example, are generally bigger, stronger, and harder to restrain than younger children. And children who have allegedly committed murder would generally be considered more dangerous to society than those who allegedly committed less violent acts. Nor are those qualifications discriminatory in ways objectionable under the Utah or federal constitutions. *See infra* Part II. Therefore, the automatic waiver statute passes a rational basis standard of review under substantive due process.

*B. The Automatic Waiver Statute Does Not Violate Procedural Due Process Under Either the Utah or Federal Constitution*

¶ 13 "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution. Therefore, our analysis of questions concerning procedural due process under [both state and federal] constitutions are also substantially the same." *Bailey v. Bayles*, 2002 UT 58, ¶ 11 n. 2, 52 P.3d 1158 (internal quotation marks omitted). Both constitutions provide that there must be due process of law to deprive any person of "life, liberty or property." U.S. Const. amend. V and XIV; Utah Const. art. I, § 7. Procedural due process guarantees minimal requirements of notice and a hearing where there are significant interests of life, liberty, or property at stake. All parties agree that Mr. Angilau received no hearing regarding whether his prosecution should be in adult or juvenile court, because the automatic waiver statute bypasses the juvenile system entirely. The question then is whether Mr. Angilau had a significant life, liberty, or property interest at stake. If he did, then he was denied proper procedural due process when his case went to the district court without a hearing in the juvenile court.

¶ 14 Mr. Angilau argues he had a liberty interest at stake because of the longer and harsher sentences available in adult criminal court, and because of the possibility of being incarcerated in adult institutions. The incarceration question is a distinct and separate issue, which we do not address here, because it is not the subject of the automatic waiver statute.[7] The statute at issue controls jurisdiction but mentions nothing regarding location or conditions of incarceration. As far as the "harsher" sentences available in adult court are concerned, they do not implicate a liberty interest for Mr. Angilau, because he was never entitled to juvenile jurisdiction once he met the criteria in the automatic waiver statute. *See* Utah Code Ann. § 78A–6–701(1)(a). One cannot hold an interest in something to which one was never entitled. *See Mohi*, 901 P.2d at 1005. Just as a person who allegedly commits a crime at the age of 18 cannot hold an interest in being tried in juvenile court, neither can someone who meets the qualifications outlined in the automatic waiver statute.

¶ 15 Mr. Angilau attempts to use a footnote from our decision in *Mohi* to show that all juveniles must first receive some procedural due process in the juvenile court before they may be prosecuted as adults. Mr. Angilau's reliance on this footnote is misplaced, because both federal cases cited therein are

---

**6.** Besides providing the district court exclusive original jurisdiction over minors sixteen and older who are charged with murder or aggravated murder, the statute also grants the same jurisdiction "over all persons 16 years of age or older charged with … an offense which would be a felony if committed by an adult if the minor has been previously committed to a secure facility as defined in Section 62A–7–101." Utah Code Ann. § 78A–6–701(1)(b). This part of the statute is not at issue in this case, and we do not address it.

**7.** That question is pending in a companion case.

distinguishable from this case. The footnote in Mohi states:

> Whether the legislature can try all juveniles as adults without any opportunity for review may raise federal constitutional questions. *See, e.g., Kelley v. Kaiser,* 992 F.2d 1509 (10th Cir.1993). "Having created the juvenile court system, under *Kent,* it is the State's decision to seek to treat a juvenile as an adult that, *in and of itself triggers the need for a hearing.*" *Id.* at 1515 (emphasis added) (citing *Kent v. United States,* 383 U.S. 541 [86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) ]).

*Id.* at 1003 n. 19. The critical difference between *Kent* and *Kelley,* and this case, is that in the federal cases the juvenile court was at least initially presumed to have proper jurisdiction over the minors involved and transfer to adult court was at issue. *See Kent,* 383 U.S. at 552, 86 S.Ct. 1045; *Kelley,* 992 F.2d at 1511. Thus, the minors in those cases possessed a liberty interest created by statute that they were in danger of losing.[8]

¶ 16 *Kent,* for example, involved waiver of juvenile court jurisdiction where the juvenile court had original jurisdiction over the child. *See* 383 U.S. at 552, 86 S.Ct. 1045. *Kent* mandated that a child receive the opportunity for at least an informal hearing with assistance of counsel who has access to all relevant records before the juvenile court could waive its jurisdiction over the juvenile. *Id.* at 561–62, 86 S.Ct. 1045. *Kent* also outlined determinative factors to be considered when deciding whether to waive juvenile court jurisdiction. *Id.* at 566–67, 86 S.Ct. 1045.

¶ 17 *Kelley* involved a statute that had been declared unconstitutional in a previous case on equal protection grounds based on gender discrimination. The offending statute defined delinquent children as males under sixteen and females under eighteen who violated the law. *See* 992 F.2d at 1511 n. 3. To remedy past errors under that statute,

courts had to determine whether a male child *would have been able to be certified as an adult at the time of his trial. Id.* at 1511. Thus, in effect, it was much like *Kent* in that juvenile jurisdiction was presumed to have existed initially and could only be waived after a hearing.

¶ 18 By contrast, in Utah's statutory scheme, the legislature has bypassed the juvenile system entirely, giving original jurisdiction to adult courts under certain circumstances (none of which involve the type of discrimination that was at issue with the statute in *Kelley* ). Because Mr. Angilau was sixteen years old and was charged with murder, he fell under Utah's automatic waiver statute and was immediately subject to the district court's jurisdiction. *See* Utah Code Ann. § 78A–6–701(1)(a). He did not possess any initial statutory rights associated with juvenile court protections and thus could not be deprived of rights he never held.[9]

¶ 19 Because Mr. Angilau held no initial right (statutory or constitutional) to be brought before a juvenile court, there was no need for a hearing before charging him in adult court. The automatic waiver statute, therefore, does not violate procedural due process.

## II. THE AUTOMATIC WAIVER STATUTE DOES NOT VIOLATE THE UTAH CONSTITUTION'S UNIFORM OPERATION OF LAWS PROVISION OR FEDERAL EQUAL PROTECTION

¶ 20 Mr. Angilau has challenged the constitutionality of the automatic waiver statute under both the Utah Constitution's uniform operation of laws provision and the United States Constitution's Equal Protection Clause. Because the uniform operation of laws provision offers the same, if not more, protections than the federal Equal Protection

---

**8.** Although the statute at issue in *Kelley* on its face did not provide the liberty interest for sixteen- and seventeen-year-old males, the statute was the basis for the liberty interest when it was found to violate equal protection. *See infra* ¶ 17.

**9.** We have already held that a child's interest in his or her trial forum is "critical," but we clarify

that the interest in remaining under juvenile court jurisdiction only exists where there is an initial legislative right to be included in the juvenile system. *See Mohi,* 901 P.2d at 998–99; *State ex rel. Clatterbuck,* 700 P.2d 1076, 1079 (Utah 1985).

Clause, we need only address whether the statute conflicts with Utah's Constitution on this point.

The uniform operation of laws provision and the Equal Protection clause address similar concerns in determining the constitutionality of a statute. Both have as their basic concept the settled concern of the law that the legislature be restrained from the fundamentally unfair practice of creating classifications that result in different treatment being given [to] persons who are, in fact, similarly situated. The two provisions are substantially parallel. Accordingly, because our review [of] legislative classifications under article I, section 24 [of the Utah Constitution] . . . is at least as exacting and, in some circumstances, more rigorous than the standard applied under the [Fourteenth Amendment of the] federal constitution, we evaluate the constitutionality of the statute under Utah law.

*Merrill v. Utah Labor Comm'n*, 2009 UT 26, ¶ 7, 223 P.3d 1089 (alterations in original) (internal quotation marks omitted).

The essence of the uniform operation of laws principle is that legislative classifications resulting in differing treatment for different persons must be based on actual differences that are reasonably related to the legitimate purposes of the legislation. [P]ersons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same.

*Id.* ¶ 6 (alterations in original) (internal quotation marks omitted).

 ¶ 21 When determining the constitutionality of a statute under the uniform operation of laws provision, we ask (1) what classifications the statute creates; (2) "whether different classes . . . are treated disparately;" and (3) if there is disparate treatment between classes, "whether the legislature had any reasonable objective that warrants the disparity." *State v. Schofield*, 2002 UT 132, ¶ 12, 63 P.3d 667 (alteration in original) (internal quotation marks omitted).

On the third point, there are two possible levels of scrutiny—each involving a three-part analysis. *See State v. Drej*, 2010 UT 35, ¶ 34, 233 P.3d 476. If "a legislative enactment implicates a fundamental or critical right or creates classifications which are considered impermissible or suspect in the abstract, we apply a heightened degree of scrutiny." *Gallivan v. Walker*, 2002 UT 89, ¶ 40, 54 P.3d 1069 (internal quotation marks omitted); *see also id.* ¶¶ 41–43 (outlining the heightened test). Otherwise, we employ a rational basis review that involves determining (1) whether the classification is reasonable; (2) whether the objectives of the legislative action are legitimate, and (3) whether there is a reasonable relationship between the classification and the legislative purpose. *See Merrill*, 2009 UT 26, ¶¶ 8–9, 223 P.3d 1089; *Drej*, 2010 UT 35, ¶ 34, 233 P.3d 476.

### A. The Automatic Waiver Statute Creates a Classification

¶ 22 The automatic waiver statute creates a classification premised on the alleged offender's age together with the offense(s) charged. The plain language of the statute specifies that minors who are sixteen years of age or older and are charged with murder or aggravated murder will automatically be under the district court's "exclusive original jurisdiction." [10] Utah Code Ann. § 78A–6–701(1)(a). The juvenile statutory scheme provides that children under sixteen who commit murder or aggravated murder will at least begin under the jurisdiction of the juvenile court, as will sixteen- and seventeen-year-olds who commit lesser offenses.[11] *See id.* § 78A–6–101 to –1210.

### B. The Automatic Waiver Statute Provides Disparate Treatment of an Identifiable Class

 ¶ 23 "Disparate treatment exists when the statutory scheme work[s] a discriminatory hardship on an identifiable group of persons who were singled out for treatment different from that to which other iden-

---

10. *See supra* n. 5.

11. This will not be the case if the sixteen- or seventeen-year-olds are charged with felonies

and qualify under other conditions of the automatic waiver statute. *See supra* note 5.

tifiable groups were made subject." *Drej*, 2010 UT 35, ¶ 36, 233 P.3d 476 (alteration in original) (internal quotation marks omitted). The groups must also be similarly situated. *Id.* It cannot be disputed that the potential consequences for the same alleged actions can be much more severe in adult courts than in juvenile courts—especially in the case of murder, as is at issue here. And while sixteen-year-olds charged with murder may not be similarly situated to sixteen-year-olds charged with lesser crimes, *see id.* ¶¶ 36–39, we are not prepared to hold that fifteen-year-olds charged with murder are not similarly situated to sixteen-year-olds charged with the same crime. The two might be days apart in age, yet treated very differently under the law. The statutorily created classification thus does create disparate treatment.

### C. The Legislature Has Reasonable Objectives That Warrant the Disparate Treatment

¶ 24 Having determined the statute creates a classification with disparate treatment, we must decide the level of scrutiny to apply in analyzing whether the legislature has reasonable objectives that warrant the disparate treatment. Mr. Angilau argues that the statute implicates "fundamental or critical rights" deserving of heightened scrutiny. *See Gallivan*, 2002 UT 89, ¶ 40, 54 P.3d 1069. We note that the classifications at issue here (age and severity of offense) are not "impermissible or suspect" classifications that would also require heightened review. *See id.; see also Merrill*, 2009 UT 26, ¶ 8, 223 P.3d 1089 ("We … subject classifications based on age to rational basis review."). Mr. Angilau proffers several possible fundamental or critical rights in arguing for heightened scrutiny. He argues the statute "impinges upon the liberty and lives of our children" and that "education is likewise jeopardized by prosecution in the adult system."

¶ 25 While life and liberty are indeed fundamental rights, the automatic waiver statute does not rob minors of any of the constitutional protections in that regard that are available to all persons subject to the district court's jurisdiction, regardless of age. Although juvenile courts may provide more statutory protection for an individual's life and liberty than required by the United States and Utah constitutions, persons who do not qualify for statutorily created extra protections have no standing to claim an interest in those extra protections absent improper discrimination. *See supra* Part I.B.

¶ 26 As for a minor's right to education, this is a fundamental right, but it is not relevant to this opinion. *See* Utah Const. art. X, § 1; *Logan City Sch. Dist. v. Kowallis*, 94 Utah 342, 77 P.2d 348, 352 (1938). If minors in adult prisons are not receiving education in accordance with applicable laws, that is a serious situation that should be remedied—but it is not the subject of the statute at issue. We consider the location and conditions of confinement as a separate issue from the jurisdictional concerns addressed in the automatic waiver statute.

¶ 27 Because Mr. Angilau has failed to identify a fundamental right or suspect class at issue in the statute, we will not use a heightened standard of scrutiny. We proceed with the three-part inquiry under a rational basis review.[12]

### 1. The Classification in the Automatic Waiver Statute Is Reasonable

¶ 28 "Broad deference is given to the legislature when assessing 'the reasonableness of its classifications and their relationship to legitimate legislative purposes.'" *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 17, 211 P.3d 382 (quoting *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989)). A line drawn based on age will necessarily appear somewhat arbitrary, because people close to the boundary on either side may be very similarly situated. But this court and "the United States Supreme Court [have] held that age is a permissible method of classifying individu-

---

12. Some past cases have called the heightened review a "reasonable in relation" test, but since those terms are used in the rational basis test, and not the heightened review as outlined in *Gallivan v. Walker*, 2002 UT 89, ¶ 40, 54 P.3d 1069, we dispense with that label.

als where a rational basis exists." *Merrill,* 2009 UT 26, ¶ 12, 223 P.3d 1089. Thus age is not an unreasonable classification per se. Making a classification according to severity of offense is also not unreasonable per se. *See Drej,* 2010 UT 35, ¶ 18, 233 P.3d 476 ("The legislature unquestionably has the exclusive authority to define what acts constitute crimes and what the elements of those crimes are.") If the legislature can define crime and punishment, it is only reasonable that it can classify individuals based on charges related to those crimes. Finally, the classification at issue, consisting of the oldest minors charged with murder, is reasonable because it applies equally and predictably to all members within the class. *See Schofield,* 2002 UT 132, ¶ 14, 63 P.3d 667 ("The statute applies equally and predictably to all [alleged] offenders .... [and therefore] the treatment is not arbitrary or without an objective standard."). The minor's "age at the commencement of legal proceedings is quickly and objectively ascertained." *Id.* The only discretion the prosecutor has in relation to the automatic waiver statute is "traditional prosecutor[ial] discretion" in determining what charges to pursue. *See Mohi,* 901 P.2d at 1002–04 ("Selecting a charge to fit the circumstances of a defendant and his or her alleged acts is a necessary step in the chain of any prosecution .... requir[ing] a legal determination on the part of the prosecutor as to which elements of an offense can likely be prove[n] at trial.").

### 2. The Objectives of the Automatic Waiver Statute Are Legitimate

¶ 29 In determining whether legislative objectives are legitimate, "we are not limited to considering those purposes that can be plainly shown to have been held by some or all legislators. We will sustain a classification if we can reasonably conceive of facts which would justify the distinctions.... [I]t is enough that they may be reasonably imputed to the legislative body." *Blue Cross & Blue Shield,* 779 P.2d at 641 (internal quotation marks omitted).

¶ 30 While we need identify only one possible legitimate purpose behind the legislation at issue, in this case there are multiple legiti-

mate objectives. The State suggests that the statute serves purposes of public safety, appropriate sanctions, and individual accountability—the first purposes mentioned in the Juvenile Court Act. *See* Utah Code Ann. § 78A–6–102(5)(a) (2008). This is not an exhaustive list of possible legitimate objectives behind the statute, but these purposes are clearly within the bounds of legitimate governmental concern.

### 3. There Is a Reasonable Relationship Between the Classification and the Legislative Purpose

¶ 31 "In the last step of the three-part inquiry, we determine whether the legislature's classification is reasonably related to its legitimate objectives." *Merrill,* 2009 UT 26, ¶ 22, 223 P.3d 1089; *see also Blue Cross & Blue Shield,* 779 P.2d at 641 ("The third and most critical question is whether the legislature chose a permissible means to achieve its legitimate ends."). Does placing the oldest children charged with murder directly in adult courts further the purposes of public safety, appropriate sanctions, and individual accountability? Given that in the juvenile system individuals cannot be detained beyond the age of twenty-one, Utah Code Ann. § 78A–6–120 (2008), and because juvenile court does not allow for criminal convictions, *id.* § 78A–6–116(1) (Supp. 2010), the classifications appear designed to further legitimate objectives. The longer sentences available in adult courts could provide greater protection of society from dangerous individuals. It also would seem to promote individual accountability and more appropriate sanctions to have criminal convictions and longer sentences available where the oldest minors are charged with murder. For example, it would seem inappropriate to have the oldest juveniles facing the shortest detainment for murder, because of the shorter period before their twenty-first birthdays.

¶ 32 The legislature certainly could have chosen more lenient means to further these same objectives—such as requiring certification hearings for these minors, thus permitting any falsely accused or developmentally impaired children, for example, to remain in the juvenile system. But there is no require-

ment that an otherwise permissible classification be the best of all alternatives. Here the statute "clearly applies equally to all persons within the classes it creates and the disparate treatment given the statutory classes is based on differences that have a reasonable tendency to further the objectives of the statute. It is therefore uniform both on its face and in operation." *Schofield*, 2002 UT 132, ¶ 18, 63 P.3d 667. Therefore, we hold that the automatic waiver statute comports with the Utah Constitution's uniform operation of laws provision. Because it passes scrutiny under this test, it also satisfies federal equal protection requirements. *See Merrill*, 2009 UT 26, ¶ 7, 223 P.3d 1089.[13]

## III. THE AUTOMATIC WAIVER STATUTE DOES NOT VIOLATE UTAH'S PROHIBITION ON THE ENACTMENT OF SPECIAL OR PRIVATE LAWS

¶ 33 Mr. Angilau argues that the automatic waiver statute violates article VI, section 26 of Utah's constitution, because that provision "forbids the legislature to enact laws that create unnatural classifications, which separate out people who are not legitimately particularized or separated from the group of which they are a natural or intrinsic part." [14] Because the analysis that satisfies the uniform operation of laws provision also satisfies this provision of the constitution, *see Grand Cnty. v. Emery Cnty.*, 2002 UT 57, ¶ 24, 52 P.3d 1148, we hold there is no violation for the same reasons explained previously. *See supra* Part II.

## IV. WE FIND NO VALID BASIS AMONG MR. ANGILAU'S ARGUMENTS FOR A CONSTITUTIONAL RIGHT FOR ALL MINORS TO BE PROSECUTED IN JUVENILE COURT

¶ 34 The rest of Mr. Angilau's arguments are predicated on the notion that Utah should recognize a constitutional right for all juveniles to be treated in juvenile court. These arguments are rather cursorily briefed and have not identified a single case or court that has adopted such a premise. In the absence of a textual basis or persuasive authority derived from other sources, we are not prepared to recognize such a right in this case.

¶ 35 Mr. Angilau argues this right could be supported by multiple provisions of the Utah and federal constitutions. Under the Utah Constitution he argues article I, section 7 (the due process provision) could support this right, because it "has previously been interpreted to require a full panalopy of procedural rights in contexts such as this one, wherein both life and liberty are at stake." [15] As discussed earlier in this opinion, Mr. Angilau has no more life and liberty interests at stake than any adult facing criminal charges, and he is subject to the same breadth of constitutional protections as apply to those adults. *See supra* Part I. His argument under federal due process fails for similar reasons. *See Bailey v. Bayles*, 2002 UT 58, ¶ 11 n. 2, 52 P.3d 1158.

13. Although we find there is a reasonable relationship between the classification and the legislative purpose, we note that there is emerging research showing "higher recidivism rates among offenders who had been transferred to [adult] criminal court, compared with those who were retained in the juvenile system." Richard E. Redding, *Juvenile Transfer Laws: An Effective Deterrent to Delinquency?*, OJJDP Juv. Just. Bull., June 2010, at 1, 6. Possible explanations include:

- The stigmatization and other negative effects of labeling juveniles as convicted felons.
- The sense of resentment and injustice juveniles feel about being tried and punished as adults.
- The learning of criminal mores and behavior while incarcerated with adult offenders.

- The decreased focus on rehabilitation and family support in the adult system.

A felony conviction also results in the loss of a number of civil rights and privileges, further reducing the opportunities for employment and community reintegration.

*Id.* at 7 (citation omitted). Thus, there would clearly also be a reasonable basis for keeping these juveniles within the juvenile system should the legislature choose to do so.

14. Mr. Angilau cited *Utah Farm Bureau Insurance Co. v. Utah Insurance Guaranty Ass'n*, 564 P.2d 751, 754 (Utah 1977), in support of this argument.

15. Mr. Angilau cites *Christiansen v. Harris*, 109 Utah 1, 163 P.2d 314, 317 (1945), in support of this statement.

¶ 36 Under both article I, section 24 (the uniform operation of laws provision) and article VI, section 26 (the prohibition of special or private laws) of the Utah Constitution, Mr. Angilau makes arguments regarding the prohibition of unnatural or unreasonable classifications among children. However, as described at length earlier in this opinion, we cannot conclude that the relevant classifications are unreasonable. *See supra* Parts II–III. His federal equal protection argument fails for similar reasons. *See Merrill v. Utah Labor Comm'n,* 2009 UT 26, ¶ 7, 223 P.3d 1089.

¶ 37 Under article I, section 9 (the unnecessary rigor provision) of the Utah Constitution, Mr. Angilau argues that "[c]lassifications which remove children from juvenile court, and risk their placement in adult detention facilities, without regard to their actual cases and circumstances, are by nature overbroad and unduly harsh, and dehumanize and degrade those individual children who need and deserve to be protected by the juvenile court system." Again, this court views the questions of conditions and location of confinement as separate from that of jurisdiction, and we do not consider them here. The statute at issue says nothing regarding conditions or location of incarceration of minors under district court jurisdiction—those issues are addressed by other statutes in the Juvenile Court Act. *See* Utah Code Ann. § 78A–6–101 to –1210.

¶ 38 Under article I, section 27 (the provision stating that "[f]requent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government"), Mr. Angilau argues that because the State "has a well-developed juvenile court system to protect its children and strengthen family units . . . . [t]his State must uniformly protect the rights of children prosecuted in juvenile court, unless a thorough and proper inquiry and adjudication calls for prosecution in the adult system." The State properly responds that Mr. Angilau "ignores the myriad of other purposes behind the juvenile system" and that the "section is no less well met by the State's interest in protecting society from violent juvenile offenders." The legislature, in cre-

ating a "well-developed juvenile court," has opted to exclude the oldest minors charged with murder from its jurisdiction, and that choice is consistent with the fundamental principle of protecting society.

¶ 39 This court has repeatedly observed that "[a] juvenile has no right to treatment in the juvenile system." *State v. Bell,* 785 P.2d 390, 399 (Utah 1989); *accord State v. Mohi,* 901 P.2d 991, 1005 (Utah 1995) ("[T]he state is not required to give juvenile status to anyone."); *State ex rel. Atcheson,* 575 P.2d 181, 184 (Utah 1978) ("In regard to appellant's claim of 'right' to treatment in the juvenile system, there simply is no such right."). What the legislature has done with the automatic waiver statute is precisely what we explained in *Mohi* it is authorized to do: "If it is the legislature's determination to have all members of a certain group of violent juveniles (such as repeat offenders, those who use guns, etc.) tried as adults, it is free to do so." 901 P.2d at 1003.

## CONCLUSION

¶ 40 Mr. Angilau has not met the burden of demonstrating that the automatic waiver statute is unconstitutional. *See State v. Mohi,* 901 P.2d 991, 996 (Utah 1995). Neither has he demonstrated an inherent right to juvenile treatment for all juveniles in the Utah or federal constitutions. Accordingly, we affirm the district court's decision that Utah Code section 78A–6–701 is constitutional as applied to Mr. Angilau.

¶ 41 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Judge HADLEY concur in Chief Justice DURHAM's opinion.

¶ 42 Justice WILKINS does not participate herein; Judge SCOTT M. HADLEY sat.